devise void. If no reasonable interpretation would invalidate the devise, it is immaterial which of several was his real intention. I can discover none that suspends the power of alienation for any period. The devise to the wife of the rents and profits until Clark .arrived at age vested in her a legal title. It was at all times alien-.able by her. Bailey v. Bailey, 97 N. Y. 460. If the devise of the fee when Clark became of age was vested, and not subject to be divested by the death of Clark before that time (as I think was the ·case), this remainder was also always alienable by the widow. If the devise was to be contingent on Clark's reaching full age, or sub-.ject to be divested by his death before that time, then the remainder in that contingency descended to the testator's heirs at law. They and the widow, acting together, could at any time after the testa-tor's death convey an absolute title. The devise was therefore good.

The next claim of the appellant is that the devise to ·the widow and that to the testator's daughter Hannah Matilda are repugnant, and that hence, under the well-established rule in cases of repug-nancy, the latter devise in the will must prevail. "But the rule· which sacrifices the former of several contradictory clauses is never applied, but on the failure of every attempt to give the whole such a construction as will render every part of it effective." 1 Jarm. Wills, 475. To same effect, see 1 Redf. Wills, 448. We think the two devises are not irreconcilable. The first clause is of 20 feet of the Miner place. The second is of the Miner place. Ordinarily, the designation of a tract or farm or plot includes the whole of the plot, and the use of the term in any other sense is not strictly ac-curate. But the question is not of accuracy of diction, but of the intent of the testator. When he devises to one person a part of a tract, and then to another person the tract, it is apparent that in the latter devise he intends to give only the part of the tract previ-ously undisposed of,—the tract reduced·or restricted by the previous devise. This seems to me so clear as to forbid elaboration, and is justified by authority. In Holdfast v. Pardoe, 2 W. Bl. 974, the tes-tator devised to Elizabeth Hitchcock her farm in the possession of Charles Bocock, and subsequently in the will devised all her lands in Lowlayton marsh to the children of her uncle, Henry Moore. Part of the Bocock farm lay in Lowlayton marsh. It was held that the devises were not repugnant, and that Elizabeth Hitchcock took the part of the Bocock farm which lay in Lowlayton marsh. This case is stronger than the one now before us.

The judgment appealed from should be affirmed, with costs. All concur.

---

COSGRAY v. NEW ENGLAND PIANO CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 20, 1896.)

CONTRACTS—CONSIDERATION.
    Plaintiff, by written contract, agreed to work for defendant for one year from January 1, 1892, at $30 a week. On January 1, 1893, he was informed that he should continue his services for another year, at $1,800 a year, but he was paid only $30 per week, as before. In July, 1893, the written contract was renewed

by the indorsement: "The above agreement is continued in force till July 7, 1894." Plaintiff claimed that he was afterwards told that he would be paid $1,800, notwithstanding the renewal. *Held,* that plaintiff could not recover more than $30 a week from date of the renewal of the written contract, there being no consideration for the oral promise.

Appeal from trial term, Kings county.

Action by John G. Cosgray against the New England Piano Company of New York to recover salary alleged to be due to plaintiff from defendant. From a judgment entered on a verdict in favor of plaintiff for $1,448, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

G. A. Clement, for appellant.

William D. Tyndall and George William Hart, for respondent.

WILLARD BARTLETT, J. At the beginning of the year 1892, the plaintiff, then being in the employ of the New England Piano Company, made the following contract with that corporation:

"New York, January 2, 1892.

"New England Piano Co. of N. Y., 98 Fifth Avenue—Gentlemen: I hereby agree to devote all my time and efforts in the services of the New England Piano Co. of N. Y. from this date until Jan. 1, 1893, in consideration of a weekly compensation of thirty dollars ($30); New England Piano Co. of N. Y. to pay all my legitimate expenses connected with their interests.　　J. Gordon Cosgray.

"Accepted:　　　　　　　　New England Piano Co. of N. Y.,

"T. J. Quin, Mgr."

According to his own testimony, the plaintiff, on January 1, 1893, asked Mr. Quinn, the manager of the company, for a further contract, and was told by Mr. Quinn that he should continue his services for another year, at $1,800 a year. On July 7, 1893, having received only $30 a week up to that time, the plaintiff says he asked Mr. Quin for the back salary which had not been paid, and that he was requested to take a piano in lieu thereof. On the same day, however, the foregoing contract, dated January 2, 1892, was sent for, and the following memorandum was written upon it, and signed by the plaintiff and Mr. Quin:

"July 7, 1893.

"The above agreement is continued in force till July 7, 1894.

"J. Gordon Cosgray.

"New England Piano Co. of N. Y.,

"T. J. Quin, Mgr."

Subsequently, a conversation took place between Mr. Quin and the plaintiff, in which, as the plaintiff tells us, he was assured that he should receive $240 a year "excess of salary" over $1,560, payable in two installments, one each six months. This would make $1,800 a year. The additional $240 per annum, however, was never paid. The plaintiff further claims that shortly after July 7, 1894, he called the attention of the new manager of the company, Mr. Dygert, to the fact that his contract had expired, and Mr. Dygert told him that a written contract was unnecessary, and that he might consider himself engaged for another year. He was thereafter dismissed from

the service of the defendant, on January 5, 1895, in order to lessen the expenses of the company. In the present suit he seeks to recover the difference between $1,560 a year, which he did receive, and $1,800 a year, which he claims he should have received, for the period between January 1, 1893, and the date of his discharge, and also compensation at the rate of $1,800 per annum from that date to July 7, 1895, when his employment would, in any event, have terminated.

We think there is an insuperable obstacle to the successful prosecution of the plaintiff's claim for compensation at the rate of $1,800 a year. The written contract of January 2, 1892, terminated on January 1, 1893. Assuming that an oral agreement to pay the plaintiff $1,800 a year was made by Mr. Quin, the manager of the defendant, shortly afterwards, as the plaintiff says there was, that oral agreement came to an end on July 7, 1893, when the previous written contract of January 2, 1892, was, by the execution of the memorandum at the foot thereof, put into force again, and continued until July 7, 1894. The fact that, after the signing of this memorandum, continuing a contract which specified $30 a week as the plaintiff's compensation, Mr. Quin told him that he should, nevertheless, receive $240 a year additional, cannot avail the plaintiff. There was no consideration for this alleged oral agreement. The memorandum already executed bound the plaintiff, on the one hand, to work for $30 a week, and bound the defendant, on the other hand, to employ him till July 7, 1894. As Mr. Justice Brown said in Robinson v. Jewett, 116 N. Y. 40, 53, 22 N. E. 224, 227, the "performance of an act which a party is under a legal obligation to perform cannot constitute a consideration for a new contract." The plaintiff's obligation to serve the defendant from July 7, 1893, to July 7, 1894, was fixed already, and his discharge of the duty thereby imposed upon him could not constitute a consideration for an agreement to pay him more than the amount for which he had already promised to work. The case might be different if the parties had, by word of mouth, agreed wholly to abrogate and do away with a pre-existing written contract in regard to service and compensation, and had substituted for it another agreement. But the contention here is that the agreement expressed in the memorandum of July 7, 1893, remained good for every purpose except to fix the plaintiff's compensation. We do not think it could thus be modified, because there was no consideration for such modification. As the verdict was based upon a contrary view, the judgment will have to be reversed. It does not follow, however, that the plaintiff may not recover the balance of his salary at the rate of $1,800 a year for the period between January 1 and July 7, 1893, and damages for the compensation which he lost, at the rate of $30 a week, by reason of being discharged without justifiable cause before the expiration of his term of employment, if on another trial the jury should find it to be the fact that, after the new manager of the company took charge, he told him he might consider himself engaged for another year.

Judgment and order reversed, and new trial granted, with costs to abide the event. All concur.