LOUIS SCHWARTZREICH, Respondent, v. BAUMAN-BASCH, INCORPORATED, Appellant.

**Contract — trial — where record shows question of fact it is error for trial justice to set aside verdict and dismiss complaint — contract may be set aside by parties and new one made at one and the same time — charge.**

1. Where, in an action to recover on a contract for services, defended on the ground that there was no consideration for the contract as the plaintiff was already bound under a prior agreement to do the same work for the same period for a lesser salary, the record shows that a

question of fact was presented and that the evidence most favorable for the plaintiff would sustain a finding that the first contract was destroyed, canceled or abrogated by the consent of both parties, it was error for the trial justice to set aside a verdict in favor of plaintiff and dismiss the complaint and a reversal of such ruling was proper.

2. A contract of employment may be set aside or terminated by the parties to it and a new one made or substituted in its place and it is competent to end the one and make the other at the same time.

3. A charge, by the trial justice, therefore, to the effect that if the jury find that the old contract was, prior to or at the time of the execution of the new contract, " cancelled and revoked by the parties by their mutual consent then it is your duty to find that there was a consideration for the making of the contract in suit " and " the test question is whether by word or by act, either prior to or at the time of the signing " of the new contract " these parties mutually agreed that the old contract from that instant should be null and void," is correct and a reinstatement of the verdict was proper.

*Schwartzreich* v. *Bauman-Basch, Inc.,* 188 App. Div. 960, affirmed.

(Submitted April 27, 1921; decided May 10, 1921.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 28, 1919, affirming a determination of the Appellate Term, which reversed a judgment in favor of defendant entered upon an order of the trial justice in the City Court of the city of New York setting aside a verdict in favor of plaintiff and directing a dismissal of the complaint and reinstated said verdict.

*Louis Boehm* and *Samuel Zeiger* for appellant.   Not only was there lacking evidence of a cancellation of the first contract for $90 before the second contract for $100 was agreed upon, but it affirmatively appears from plaintiff's own testimony that such cancellation was not even mentioned.   (*Disker* v. *Herten,* 73 App. Div. 453; 175 N. Y. 480; *Sanders* v. *Pottlitzer Bros. Fruit Co.,* 144 N. Y. 209; *Pratt* v. *Hudson R. R. R. Co.,* 21 N. Y. 305; *Belmar Contracting Co.* v. *State,* 185 N. Y. Supp. 734.)   A promise to do that which one is already legally obligated to do does not furnish a consideration sufficient to support a ·

contract. (*Teele* v. *Mayer*, 173 App. Div. 869; *Weed* v. *Spears*, 193 N. Y. 289; *Carpenter* v. *Taylor*, 164 N. Y. 171; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392.) Both sides having offered all their proof, and both plaintiff and defendant having testified as to what took place when the second contract was signed, and the contract itself being plain and unambiguous, a question of law was presented for the decision of the trial court, and its dismissal of the complaint on the merits was proper. (*Carpenter* v. *Taylor*, 164 N. Y. 171.)

*I. Maurice Wormser* and *I. Gainsburg* for respondent. The trial court erred in dismissing the complaint on the merits. There was, at the very least, a clean-cut issue of fact for the jury, whether the $90 contract was canceled and rescinded by the parties, and a new $100 contract made. (*Harris* v. *Carter*, 3 El. & Bl. 559; *Hart* v. *Lauman*, 39 Barb. 410; *Lattimore* v. *Harsen*, 14 Johns. 330; *Spier* v. *Hyde*, 78 App. Div. 151, 159; *Bailey* v. *Elm City Lumber Co.*, 167 App. Div. 42, 45; *Stewart* v. *Keteltas*, 36 N. Y. 338; *Wood* v. *Knight*, 35 App. Div. 21; *International Cont. Co.* v. *Lamont*, 155 U. S. 303; *Am. Ex. Nat. Bank* v. *Smith*, 61 Misc. Rep. 49; 113 N. Y. Supp. 236; *Galway* v. *Frignano*, 134 N. Y. Supp. 571.)

CRANE, J. On the 31st day of August, 1917, the plaintiff entered into the following employment agreement with the defendant:

> " BAUMAN-BASCH, INC.,
> " Coats & Wraps
> " 31–33 East 32nd Street
> " New York

" Agreement entered into this 31st day of August, 1917, by and between Bauman-Basch, Inc., a domestic corporation, party of the first part, and Louis Schwartz-reich, of the Borough of Bronx, City of New York, party of the second part, *Witnesseth:*

" The party of the first part does hereby employ the party of the second part, and the party of the second part agrees to enter the services of the party of the first part as a designer of coats and wraps.

" The employment herein shall commence on the 22nd day of November, 1917, and shall continue for twelve months thereafter. The party of the second part shall receive a salary of Ninety ($90.00) per week, payable weekly.

" The party of the second part shall devote his entire time and attention to the business of the party of the first part, and shall use his best energies and endeavors in the furtherance of its business.

" *In witness whereof,* the party of the first part has caused its seal to be affixed hereto and these presents to be signed, and the party of the second part has hereunto set his hand and seal the day and year first above written. BAUMAN-BASCH, INC.

" S. BAUMAN

" LOUIS SCHWARTZREICH.

" In the presence of:"

In October the plaintiff was offered more money by another concern. Mr. Bauman, an officer of the Bauman-Basch, Inc., says that in that month he heard that the plaintiff was going to leave and thereupon had with him the following conversation.

" A. I called him in the office, and I asked him, ' Is that true that you want to leave us?' and he said ' Yes,' and I said, ' Mr. Schwartzreich, how can you do that; you are under contract with us?' He said, ' Somebody offered me more money.' \* \* \* I said, ' How much do they offer you?' He said, ' They offered him $115 a week.' \* \* \* I said, ' I cannot get a designer now, and, in view of the fact that I have to send my sample line out on the road, I will give you a hundred dollars a week rather than to let you go.' He said, ' If you will give me $100, I will stay.' "

Thereupon Mr. Bauman dictated to his stenographer a new contract, dated October 17, 1917, in the exact words of the first contract and running for the same period, the salary being $100 a week, which contract was duly executed by the parties and witnessed. Duplicate originals were kept by the plaintiff and defendant.

Simultaneously with the signing of this new contract, the plaintiff's copy of the old contract was either given to or left with Mr. Bauman. He testifies that the plaintiff gave him the paper but that he did not take it from him. The signatures to the old contract plaintiff tore off at the time according to Mr. Bauman.

The plaintiff's version as to the execution of the new contract is as follows:

" A. I told Mr. Bauman that I have an offer from Scheer & Mayer of $110 a week, and I said to him, ' Do you advise me as a friendly matter — will you advise me as a friendly matter what to do; you see I have a contract with you, and I should not accept the offer of $110 a week, and I ask you, as a matter of friendship, do you advise me to take it or not.' At the minute he did not say anything, but the day afterwards he came to me in and he said, ' I will give you $100 a week, and I want you to stay with me.' I said, ' All right, I will accept it; it is very nice of you that you do that, and I appreciate it very much.' "

The plaintiff says that on the 17th of October when the new contract was signed, he gave his copy of the old contract back to Mr. Bauman, who said:  " You do not want this contract any more because the new one takes its place."

The plaintiff remained in the defendant's employ until the following December when he was discharged. He brought this action under the contract of October 17th for his damages.

The defense, insisted upon through all the courts, is that there was no consideration for the new contract

as the plaintiff was already bound under his agreement of August 31, 1917, to do the same work for the same period at $90 a week.

The trial justice submitted to the jury the question whether there was a cancellation of the old contract and charged as follows:

" If you find that the $90 contract was prior to or at the time of the execution of the $100 contract cancelled and revoked by the parties by their mutual consent, then it is your duty to find that there was a consideration for the making of the contract in suit, viz., the $100 contract and, in that event, the plaintiff would be entitled to your verdict for such damages as you may find resulted proximately, naturally and necessarily in consequence of the plaintiff's discharge prior to the termination of the contract period of which I shall speak later on."

Defendant's counsel thereupon excepted to that portion of the charge in which the court permitted the jury to find that the prior contract may have been canceled simultaneously with the execution of the other agreement. Again the court said:

" The test question is whether by word or by act, either prior to or at the time of the signing of the $100 contract, these parties mutually agreed that the old contract from that instant should be null and void."

The jury having rendered a verdict for the plaintiff the trial justice set it aside and dismissed the complaint on the ground that there was not sufficient evidence that the first contract was canceled to warrant the jury's findings.

The above quotations from the record show that a question of fact was presented and that the evidence most favorable for the plaintiff would sustain a finding that the first contract was destroyed, canceled or abrogated by the consent of both parties.

The Appellate Term was right in reversing this ruling. Instead of granting a new trial, however, it reinstated

the verdict of the jury and the judgment for the plaintiff. The question remains, therefore, whether the charge of the court, as above given, was a correct statement of the law or whether on all the evidence in the plaintiff's favor a cause of action was made out.

Can a contract of employment be set aside or terminated by the parties to it and a new one made or substituted in its place? If so, is it competent to end the one and make the other at the same time?

It has been repeatedly held that a promise made to induce a party to do that which he is already bound by contract to perform is without consideration. But the cases in this state, while enforcing this rule, also recognize that a contract may be canceled by mutual consent and a new one made. Thus *Vanderbilt* v. *Schreyer* (91 N. Y. 392, 402) held that it was no consideration for a guaranty that a party promise to do only that which he was before legally bound to perform. This court stated, however:

" It would doubtless be competent for parties to cancel an existing contract and make a new one to complete the same work at a different rate of compensation, but it seems that it would be essential to its validity that there should be a valid cancellation of the original contract. Such was the case of *Lattimore* v. *Harsen* (14 Johns. 330)."

In *Cosgray* v. *New England Piano Co.* (10 App. Div. 351, 353) it was decided that where the plaintiff had bound himself to work for a year at $30 a week, there was no consideration for a promise thereafter made by the defendant that he should notwithstanding receive $1,800 a year. Here it will be noticed there was no termination of the first agreement which gave occasion for BARTLETT, J., to say in the opinion:

" The case might be different if the parties had, by word of mouth, agreed wholly to abrogate and do away with a pre-existing written contract in regard to service

and compensation, and had substituted for it another agreement."

Any change in an existing contract, such as a modification of the rate of compensation, or a supplemental agreement, must have a new consideration to support it. In such a case the contract is continued, not ended. Where, however, an existing contract is terminated by consent of both parties and a new one executed in its place and stead, we have a different situation and the mutual promises are again a consideration. Very little difference may appear in a mere change of compensation in an existing and continuing contract and a termination of one contract and the making of a new one for the same time and work, but at an increased compensation. There is, however, a marked difference in principle. Where the new contract gives any new privilege or advantage to the promisee, a consideration has been recognized, though in the main it is the same contract. (*Triangle Waist Co., Inc.,* v. *Todd,* 223 N. Y. 27.)

If this which we are now holding were not the rule, parties having once made a contract would be prevented from changing it no matter how willing and desirous they might be to do so, unless the terms conferred an additional benefit to the promisee.

All concede that an agreement may be rescinded by mutual consent and a new agreement made thereafter on any terms to which the parties may assent. Prof. Williston in his work on Contracts says (Vol. I, § 130a): " A rescission followed shortly afterwards by a new agreement in regard to the same subject-matter would create the legal obligations provided in the subsequent agreement."

The same effect follows in our judgment from a new contract entered into at the same time the old one is destroyed and rescinded by mutual consent. The determining factor is the rescission by consent. Provided this is the expressed and acted upon intention, the time

of the rescission, whether a moment before or at the same time as the making of the new contract, is unimportant.

The decisions are numerous and divergent where one of the parties to a contract refuses to perform unless paid an additional amount. Some states hold the new promise to pay the demand binding though there be no rescission. It is said that the new promise is given to secure performance in place of an action for damages for not performing (*Parrot* v. *Mexican Central Railway Co.*, 207 Mass. 184), or that the new contract is evidence of the rescission of the old one and it is the same as if no previous contract had been made (*Coyner* v. *Lynde*, 10 Ind. 282; *Connelly* v. *Devoe*, 37 Conn. 570; *Goebel* v. *Linn*, 47 Mich. 489), or that unforeseen difficulties and hardships modify the rule (*King* v. *Duluth, M. & N. Ry. Co.*, 61 Minn. 482), or that the new contract is an attempt to mitigate the damages which may flow from the breach of the first. (*Endriss* v. *Belle Isle Ice Co.*, 49 Mich. 279.) (See Anson's Law of Contract [Huffcut's Amer. Ed.], p. 114, sec. 138.) To like effect are *Blodgett* v. *Foster* (120 Mich. 392); *Scanlon* v. *Northwood* (147 Mich. 139); *Evans* v. *Oregon & Washington R. R. Co.* (58 Wash. 429); *Main Street & A. P. R. R. Co.* v. *Los Angeles Traction Co.* (129 Cal. 301).

The contrary has been held in such cases as *Carpenter* v. *Taylor* (164 N. Y. 171); *Price* v. *Press Publishing Co.* (117 App. Div. 854); *Davis & Company* v. *Morgan* (117 Ga. 504); *Alaska Packers' Association* v. *Domenico* (117 Fed. Rep. 99); *Conover* v. *Stillwell* (34 N. J. L. 54, 57); *Erny* v. *Sauer* (234 Penn. St. 330). In none of these cases, however, was there a full and complete rescission of the old contract and it is this with which we are dealing in this case. Rescission is not presumed; it is expressed; the old contract is not continued with modifications; it is ended and a new one made.

The efforts of the courts to give a legal reason for holding good a promise to pay an additional compensation

for the fulfillment of a pre-existing contract is commented upon in note upon *Abbott* v. *Doane* (163 Mass. 433) in 34 L. R. A. 33, 39, and the result reached is stated as follows: " The almost universal rule, is that without any express rescission of the old contract, the promise is made simply for additional compensation, making the new promise a mere *nudum pactum.*" As before stated, in this case we have an express rescission and a new contract.

There is no reason that we can see why the parties to a contract may not come together and agree to cancel and rescind an existing contract, making a new one in its place. We are also of the opinion that reason and authority support the conclusion that both transactions can take place at the same time.

For the reasons here stated, the charge of the trial court was correct, and the judgments of the Appellate Division and the Appellate Term should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN and ANDREWS, JJ., concur; CHASE, J., dissents.

Judgments affirmed.