In the Matter of the Judicial Settlement of the Account of Pro-ceedings of ELIZABETH PRATT DE GASQUET JAMES, as Ancillary Executrix, etc., of AMEDEE DE GASQUET JAMES, Deceased.

Surrogate's Court, Ulster County, January 17, 1927.

Judgments — satisfaction — decree of Ulster county surrogate, making ancillary executrix liable for specific amounts, was made basis for proceeding in French court to obtain judgment against said executrix — French court rendered judgment in francs for exact equivalent of sums awarded creditors by said surrogate — creditors subsequently gave satisfaction piece, reciting entry of surrogate's decree, upon pay-ment of amount of French judgment by executrix — satisfaction of French judgment satisfied decree of Surrogate's Court — fact that when French judgment was paid, currency fluctuations had depreciated value of francs in exchange so that number paid in satisfaction of judgment fell short of equaling American dollars awarded by surro-gate's decree does not warrant keeping said decree alive — reservation clause in satisfaction piece was not intended to keep decree good — executions issued on decree vacated, with direction to mark decree satisfied.

A decree of the Surrogate's Court of Ulster county, a transcript of which was duly docketed in the Ulster county clerk's office, upon which various executions had been issued, making the ancillary executrix herein liable for specific amounts, should be satisfied of record and the executions vacated, where it appears that said decree was made the basis for a proceeding in a court of France to obtain judgment against said executrix, then residing in France, for the precise sums awarded by said surrogate's decree; that said French court awarded a judgment in francs for the exact equivalent to the sums awarded creditors by said surrogate and that said creditors subsequently gave the executrix a satisfaction piece which recited the entry of the surrogate's decree upon payment of the amount of the judgment rendered by the French court, since, under the rule that payment of one judgment satisfies the other, where it satisfies causes of action upon which both judgments were predicated, the satisfaction of the French judgment satisfied the decree of the Surrogate's Court.

The mere fact that when the French judgment was paid, wide currency fluctuations had so depreciated the value of the franc in exchange that the number paid in satisfaction of the judgment of the French court fell between $45,000 and $50,000 short of equaling the number of American dollars awarded the judgment creditors by the decree of the Surrogate's Court, does not warrant keeping alive the decree of the Surrogate's Court, for inasmuch as the amount paid by said executrix in French money was at the rate of exchange prevailing on the Paris Bourse on the date of the translation into francs by the French judgment of the dollars awarded to them by the surrogate's decree, the decree itself was thereby fully satisfied.

A so-called reservation clause in the satisfaction piece executed after the rendition of the French judgment was not intended to keep alive the decree of the Surrogate's Court for the benefit of creditors, notwithstanding said satisfaction, for its language merely evidences a protest on the part of the executrix as to the amount she was being compelled to pay, rather than any agreement upon the part of all parties by which said executrix agreed to allow the payments which fully satisfied the French judgment to be credited toward the final payment of the surrogate's decree at the rate of exchange prevailing when the final payment was made and to allow the judgment creditors to proceed in this country with the collection of the balance which would then remain due upon the surrogate's decree.

Moreover, the reservation clause was not a contract binding on the judgment debtor, for there was no consideration for it.

MOTION to satisfy decree of record and to vacate executions.

*Root, Howland, Clark & Ballantine,* for Elizabeth Pratt de Gasquet James, for the motion.

*J. Noble Hayes,* for George W. Pratt de Gasquet James and Pauline Andree de la Mettrie, opposed.

KAUFMAN, S.   On November 3, 1917, a decree of this court was duly made and entered herein charging Elizabeth Pratt de Gasquet James, as ancillary executrix under the will of Amedee de Gasquet James, deceased, with the sum of $65,133.25 and interest thereon at six per cent from March 21, 1915, in favor of George W. Pratt de Gasquet James; with $65,133.25 and interest at six per cent from March 21, 1915, in favor of Pauline Andree de la Mettrie; with $41,548.22 and interest from March 21, 1915, in favor of Victoire Louise de Libran; with $32,566.68 and interest from March 21, 1915, in favor of Hereward Von der Decken, and with $32,566.68 and interest from March 21, 1915, in favor of Elizabeth Bleecker Von der Decken.   A transcript of this decree was thereafter duly docketed and filed in the Ulster county clerk's office.

The ancillary executrix against whom this decree was rendered was at the time of the entry thereof and thereafter remained in France.   Between 1917 and 1922 executions for the collection of the sums awarded by the decree were from time to time issued and were returned unsatisfied.   In 1922 George W. Pratt de Gasquet James and Pauline Andree de la Mettrie, apparently despairing of ever collecting in this country the moneys awarded to them by the decree, invoked the aid of the French courts in that endeavor by instituting in the Civil Tribunal of Saint Malo, a duly constituted judicial tribunal of competent jurisdiction of the Republic of France, a proceeding to obtain judgment against the executrix in France for the sums awarded to them by the decree. A part of the relief they sought in that proceeding, according to

34

their own papers submitted upon this motion, was " the conversion into francs for the execution in France of the debt in dollars at the rate of exchange on the day of demand, that is, the 5th day of October, 1922."

The executrix was personally served in that proceeding and retained counsel to represent her, but interposed no defense, and on December 27, 1922, judgment was duly rendered against her by the Civil Tribunal of Saint Malo for the exact relief demanded by the two creditors. One of the provisions of this judgment reads as follows: " Says that for its execution in France the debt in dollars will be converted into francs at the rate of exchange of the Paris Bourse the day of the demand of exequatur, that is October 5, 1922." The judgment rendered by the French court in their favor against the executrix was for 1,705,839.80 francs, which was the exact equivalent of the two sums of $65,133.25, or $130,266.50, awarded to these two creditors by the decree of this court, at the rate of exchange of 13.095 francs to 1 dollar quoted on the Paris Bourse on October 5, 1922.

On January 13, 1923, the executrix appeared in the Civil Tribunal of Saint Malo and filed objections to the default judgment which had been rendered against her on December 27, 1922. Her attempt to set this judgment aside was opposed by the judgment creditors, and on May 25, 1923, the Civil Tribunal of Saint Malo rendered a second judgment whereby it not only sustained its first judgment and confirmed the amount thereof, but also awarded to the judgment creditors interest at the rate of six per cent per annum upon the amount of the recovery from March 21, 1915. It will be noted that the interest thus awarded was at the same rate and from the same date as that awarded by the decree of this court.

Subsequently upon an appeal taken by the judgment debtor, the judgment of the Civil Tribunal of Saint Malo on December 27, 1922, as amended by its judgment of May 25, 1923, was affirmed by the Court of Appeals of Rennes on July 10, 1924.

During the course of this proceeding and appeal, the judgment creditors attempted to seize and hold certain property of the judgment debtor in France as security for the payment of the judgment obtained by them. These attempted seizures were held by the French courts to be invalid and ineffectual. Shortly after the affirmance by the Court of Appeals of Rennes of the judgment against her, the judgment debtor transferred all of her property in France to one Tesnieres. A proceeding was then instituted by the judgment creditors against the judgment debtor and Tesnieres to set this transfer aside as fraudulent, and on May 15, 1925, judgment was rendered by the French courts setting

aside such transfer. From this judgment the judgment debtor and Tesnieres appealed to the Court of Appeals at Rennes.

Before this appeal could be decided, however, the judgment debtor decided to pay. In September, 1925, her solicitor demanded of the judgment creditors an account to be rendered in the Court of Appeals at Rennes of the principal, interest and expenses in full due them upon the judgment of December 27, 1922, as amended and confirmed by the judgment of May 25, 1923, as affirmed by the judgment of July 10, 1924. This account was rendered by the judgment creditors in and stated by the Court of Appeals at Rennes on November 21, 1925. It charged the judgment debtor with 1,705,839.80 francs and interest thereon at six per cent per annum from March 21, 1915, and the costs and expenses of the proceedings, and credited her with the payment of 314,894.41 francs on account of the payment in America on May 25, 1923, of $24,064.92, with 52,380 francs on account of a similar American payment of $4,000 on December 17, 1923, and with 122,967.38 francs on account of another payment in America of $9,404 on May 21, 1924. It determined the balance due from the judgment debtor to the judgment creditors to be 2,303,248.59 francs.

On December 11, 1925, the judgment debtor notified the judgment creditors to appear at the office of M. Richard, a notary at Dinard, between nine o'clock and noon on December 15, 1925, to then and there receive payment in full of the amount determined by the Court of Appeals at Rennes to be due on the judgment, with interest thereon in full to the date of payment. On December 15, 1925, the judgment creditors did appear before the notary as required by the notice, and the judgment debtor then and there paid to them the full balance of 2,303,248.59 francs with interest thereon to date and received from them a written instrument in the nature of a satisfaction piece, which concededly had the effect of completely and in all respects satisfying and discharging the French judgment of December 27, 1922, as amended and confirmed by the judgment of May 25, 1923, as affirmed by the judgment of July 10, 1924.

This instrument recited the rendition and entry of the decree of the Ulster County Surrogate's Court on November 3, 1917, the judgment of the Civil Tribunal of Saint Malo on December 27, 1922, the further judgment of the same court on May 25, 1923, the judgment of affirmance by the Court of Appeals at Rennes on July 10, 1924, the various proceedings taken by the judgment creditors to obtain liens against property of the judgment debtor in France as security for the payment of such judgments, the proceedings instituted by the judgment debtor in the Court of

Surrogate's Court, Ulster County, January, 1927. [Vol. 128

Appeals at Rennes to have an account of the amount of the principal, interest and costs due upon the judgments stated, the account as stated by that court, and the notification by the judgment debtor to the judgment creditors to appear before the notary at Dinard on December 15, 1925, and then and there receive full payment of the judgment. Then follows an acknowledgment by the judgment creditors of the receipt from the judgment debtor " in good pieces of money and notes of the Bank of France, being the currency in circulation, duly counted and delivered " of 2,303,248.59 francs, the exact amount determined by the Court of Appeals at Rennes to be due on November 21, 1925, and the further sum of 4,883.52 francs interest in full from November 21, 1925, to December 15, 1925, the date of payment. The instrument then continues: " for which sum Mme. de la Mettrie and M. de Gasquet James give to Mme. de Gasquet James a good and valid release."

Immediately following this paragraph appears a so-called " reservation clause " which is largely the basis of the conflicting views of opposing counsel upon this motion, and which, according to the translation furnished by the attorney for the respondents and accepted as correct by the attorneys for the moving party in their brief, reads as follows: " It being expressly specified that the said release final with regard to its effect on all the property and securities which may exist in France is not given except under the most express reservations of all audits, accounts and final judgments which may exist in America and of all other sums which may be owing by Madam the widow de Gasquet James to M. Georges de Gasquet James by virtue of other debts and judicial decisions."

Following this paragraph is a declaration by Mme. de la Mettrie and M. de Gasquet James, the judgment creditors, that to their knowledge a receiver of the real and personal property of the judgment debtor was appointed by the Supreme Court of the State of New York by a judgment entered on September 18, 1923, and this is immediately followed by three paragraphs which read as follows:

" On his part M. Raoult in the name of Mme. de Gasquet James declares that he herewith reserves full right to object to the exactness of the account stated by Mme. de la Mettrie and M. de Gasquet James, since this account shows various errors of calculation which Mme. de Gasquet James intends to have rectified later on, as well as such other errors or omissions which she may further discover."

" M. Raoult herewith and now makes special protest against the fixing of the interest at 6%, since the legal interest is only

5%, and demands furthermore that the legal tax of the above mentioned expenses be fixed within a fortnight, and further makes protest against the amounts stated to have been received in America."

"Furthermore he declares to be personally ignorant of the judgment above mentioned bearing date the 18th day of June, 1923, which judgment has not been made enforceable in France, and that if the said judgment has subjected the property that his principal owns in America to a levy of execution it nevertheless did not deprive her of her civil rights, and that within his own knowledge Mme. de Gasquet James is not deprived of civil rights and that she still continues to enjoy forever the free exercise of her rights and actions."

Then follows a clause to the effect that by reason of the payment which the instrument acknowledges Mme. de la Mettrie and M. de Gasquet James in waiving all their rights, actions, liens and hypothecations "acknowledge pure and simple satisfaction" and consent to the entire and final cancellation of all inscriptions and transcriptions of levy and of notices of levy upon real property owned by Mme. de Gasquet James in France, which is followed by a particular and itemized statement of the same.

This instrument was duly filed and registered in the office of the clerk of the court of Dinard and concededly had the effect of fully satisfying and discharging the judgment of record in France.

The judgment debtor on February 23, 1926, filed in the Ulster county surrogate's office a duly certified and exemplified copy of this instrument, and now moves this court for a decree directing its clerk to mark its decree of November 3, 1917, satisfied and discharged in so far as it awards $65,133.25 and interest to George W. Pratt de Gasquet James and $65,133.25 and interest to Pauline Andree de la Mettrie, and also to vacate and set aside any and all executions issued out of this court and now outstanding for the collection of either of said amounts.

This motion is opposed by George W. Pratt de Gasquet James and Pauline Andree de la Mettrie, who urge, as is undoubtedly the fact, that between October 5, 1922, the date of the translation into francs by the French judgment of the dollars awarded to them by the American decree, and December 15, 1925, when the French judgment was finally paid, wide currency fluctuations occurred, resulting in a greatly depreciated value of the franc in exchange for the dollar, and that the number of francs paid by the judgment debtor on December 15, 1925, in full satisfaction of the French judgment, translated into dollars at the rate of exchange prevailing on that date, fell between $45,000 and $50,000

short of equalling the number of American dollars awarded to the judgment creditors by the decree of this court. While they concede that the French judgment is fully satisfied and discharged, they insist that the payment and satisfaction of the French judgment could not have and did not have the effect of fully satisfying the American decree, but resulted in satisfying the American decree only to the extent of the equivalent in American dollars of the francs paid on December 15, 1925, at the rate of exchange prevailing on that day. They, therefore, ask this court to direct its clerk to mark the decree of November 3, 1917, satisfied only to the extent of the actual exchange value on December 15, 1925, of the francs paid on that day in full satisfaction of the French judgment, and to allow the balance then remaining due to each of the judgment creditors to remain unsatisfied of record, and to leave the executions heretofore issued in behalf of either of said creditors outstanding and undisturbed for the collection of such balances.

After an exhaustive search of the authorities, I am frank to say that I have been unable to find any decision of any court of this State in an exactly or nearly similar case. The application of well-settled principles of law to the facts at hand, however, leads me to the conclusion that the contentions of the respondents cannot be sustained.

The decree of this court dated November 3, 1917, awarding $65,133.25 and interest from March 21, 1915, to George W. Pratt de Gasquet James against Elizabeth Pratt de Gasquet James, and a like amount with interest from the same date against her to Pauline Andree de la Mettrie was a final determination and adjudication of certain causes of action between the parties. By the filing of a transcript of this decree in the Ulster county clerk's office it was given the same force and effect as though it were a judgment of the Supreme Court. (Surrogate's Court Act, § 81.) The proceeding to obtain judgment in France was instituted by precisely the same parties against the same party to recover precisely the same debts. The judgment rendered in France by the Civil Tribunal of Saint Malo on December 27, 1922, and amended and confirmed by the same court on May 25, 1923, and affirmed by the Court of Appeals at Rennes on July 10, 1924, was likewise a final adjudication between the same parties in another jurisdiction of the same matters in dispute. It was founded upon the decree of this court, and, therefore, upon the identical causes of action upon which that decree was based. It awarded to the same parties against the same party the exact equivalent in the national currency of France, as determined by the French court, of the amount awarded to them by the decree of this court. It

awarded interest thereon at the same rate from the same date. It cannot be disputed that the French judgment was fully and completely paid, satisfied and discharged on December 15, 1925. Therefore, unless some valid reason exists for excepting the case from its operation, the decision of this matter must be controlled by the well-established rule that where two judgments have been obtained for the same cause of action the payment or satisfaction of one operates to satisfy the other. (*Woods* v. *Pangburn*, 75 N. Y. 495; *Foy* v. *Barry*, 159 App. Div. 749; *Walsh* v. *N. Y. Central & H. R. R. R. Co.*, 204 N. Y. 58; *Knapp* v. *Roche*, 94 id. 329; *Barrett* v. *Third Ave. R. R. Co.*, 45 id. 628; *Matter of Williams*, 208 id. 32; *Craft* v. *Merrill*, 14 id. 456; Freeman Judgments [5th ed.], § 1126.)

The fact that the decree of this court was for dollars and the judgment of the French court was for francs does not avoid the operation of the rule. The controlling fact is that both judgments were founded upon the same causes of action between the parties. The payment of the one judgment satisfied the other because it satisfied the causes of action upon which both judgments alike were based.

Nor is this result avoided by the fact that between October 5, 1922, and December 15, 1922, wide currency fluctuations had occurred resulting in a greatly depreciated value of the franc in exchange for the dollar at the time payment of the French judgment was effected. The creditors themselves were responsible for the rendition of the French judgment. The translation of the debt from American dollars into French francs was a part of the relief they sought and obtained from the French courts. The judgment of the French courts was that they recover from their debtor for certain debts owing by her to them a definite number of francs with interest thereon at a fixed rate from a fixed date. From that time on the French judgment could be satisfied and the debts upon which it was based extinguished by the payment of that number of francs and interest regardless of the rate of exchange. An obligation in the terms of the currency of a country takes the risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of. (*Legal Tender Cases*, 12 Wall. 457, 548, 549; *Die Deutsche Bank Filiale Nurnberg* v. *Humphrey*, —— U. S. ——.)

In this connection it is significant to note that prior to this motion the judgment creditors themselves apparently never contended that any rate of exchange other than that fixed by the French courts, to wit, that of October 5, 1922, should apply. After the entry of the French judgment on December 27, 1922, they collected from the debtor in America on account of the American

decree $24,046.92 on May 25, 1923; $4,000 on December 17, 1923, and $9,404 on May 21, 1924. They translated these amounts into francs and credited them toward the satisfaction of the French judgment, not at the rates of exchange prevailing when those payments were made, but at the rate of exchange of October 5, 1922, to which they now object. If that was the proper rate of exchange for the translation of American dollars paid at various times into French francs, I see no reason why the final payment in French francs should not be translated into American dollars at the same rate of exchange.

The respondents' attorney attempts to take the case at bar out of the operation of the rule that the payment of one judgment satisfies another judgment founded upon the same cause of action by asserting that in reality in this case there never were two judgments — that all that the French courts did was merely to authorize the execution of the American decree in France. While I do not concur in this view, I think that even if that had been the case, the result would have been the same. Call the determination of the French courts by what name you will, its precise terms were: " That for its execution in France the debt in dollars will be converted into francs at the rate of exchange of the Paris Bourse the day of the demand of exequatur, that is, October 5, 1922." In other words, adopting the respondents' theory, the French courts in effect said: " We will allow you to collect the amount of the American decree in France, but you must collect it in our national currency at the rate of exchange prevailing on the Paris Bourse on October 5, 1922." Certainly if the American decree was thus rendered collectible to its full extent in French money at that rate of exchange, it was also rendered payable in French money to its full extent at that rate of exchange; and inasmuch as the amount paid by the judgment debtor in French money was at that rate of exchange the full amount of the American decree, the decree itself was thereby fully satisfied.

The learned attorney for the respondents next asserts that the so-called " reservation clause " in the French satisfaction instrument, above quoted, was intended by all of the parties to have and did have the effect of keeping alive the American decree for the benefit of the creditors, notwithstanding the full payment and satisfaction of the French judgment. He says that this clause was a contract whereby the judgment debtor for a good consideration agreed to allow the payments which fully satisfied the French judgment to be credited toward the final payment of the American decree at the rate of exchange prevailing when the final payment was made and to allow the judgment debtors to proceed in America

with the collection of the balance which would then remain due upon the American decree. A careful study of the language of the instrument and of the circumstances leading up to and existing at the time of the execution of the instrument convinces me that this clause was never intended to be and is not an agreement binding the judgment debtor in any manner. I think that the presence of this clause in the instrument is due, not as the respondents' attorney insists " to a meeting of the minds of the parties," but to the fact that the minds of the parties were very far apart on the matters referred to in this clause — in other words, that the clause evidences a protest rather than an agreement.

To make myself clear it is necessary to briefly restate the situation of the parties at the time of the payment of the French judgment. The judgment debtor had demanded an account of the amount due for principal, interest and costs upon the judgment, and had had that account stated by the Court of Appeals at Rennes on November 21, 1925. She had then given due notice to the judgment creditors to appear at the office of the notary at Dinard on December 15, 1925, to receive full payment of the balance determined by the Court of Appeals to be due upon the judgment, with interest to the date of payment. She had thus placed herself in a position to obtain a full and final satisfaction of the judgment, irrespective of the wishes of the judgment creditors, for under French law, if the judgment creditors failed to appear to accept payment at the time and place fixed by the notice, the judgment debtor could then immediately pay the amount of the judgment and interest into court and thereby obtain complete satisfaction of the judgment. It is quite evident that the judgment debtor was fully aware of the greatly depreciated value of the franc and was deliberately placing herself in a position to benefit by it. Nor is it to be supposed that the judgment creditors were ignorant of the low value of the franc or of the dilemma in which that circumstance and the acts of the judgment debtor to force satisfaction of the judgment placed them. In view of the low value to which the franc had fallen, and of the fact that the judgment debtor since the entry of the judgment in France had become possessed of property in America from which they might eventually obtain satisfaction of the American decree in American currency, they undoubtedly did not want to accept payment in francs of the French judgment, but they could not avoid it. If they failed to appear before the notary and accept payment, the debtor would pay the required number of francs into court and obtain a satisfaction of the judgment in any event. What they did, therefore, was to appear before the notary at the time and place fixed by the

Surrogate's Court, Ulster County, January, 1927. [Vol. 128

notice and attempt to avoid the effect which they knew the payment would later be claimed to have upon the American decree by accepting it under protest and with attempted reservations of rights under the American decree. In other words, they attempted to prepare themselves to resist proceedings to satisfy the American decree by virtue of the payment and the French satisfaction instrument evidencing the same by then and there putting themselves on record in the instrument itself as objecting to the payment and the instrument being construed to have the effect of satisfying the American decree. The language of the instrument, and particularly that of the four paragraphs immediately following this clause clearly shows that this was the nature and purpose of the clause. The paragraph immediately following the so-called " reservation clause " is a statement of an objection and protest on their part that a receiver of the property of the judgment debtor was appointed by the Supreme Court of the State of New York on June 18, 1923, and that, therefore, the judgment debtor could not pay the judgment individually because her property was under the control of this receiver. In the 3d paragraph under this the judgment debtor puts herself on record as to this objection by stating that the judgment appointing the receiver has never been made enforcible in France and, therefore, has no effect upon her right to control the disposition of her property in France. In the two clauses immediately preceding this the judgment debtor reserves the right to object to the exactness of the account stated and states that she intends to have it rectified later on, protests against the fixing of interest at the rate of six per cent instead of five per cent, the legal rate in France, and protests " against the amount stated to have been received in America." It is impossible to reconcile these five paragraphs into an agreement. The presence of these paragraphs in the instrument was not due to any agreement of the parties, but to the fact that the parties did not agree.

In this connection it is pertinent to call attention to the fact that at the time of the payment and the execution of the instrument the parties were represented by able attorneys. If it was the agreement of the parties that the satisfaction of the French judgment should not operate to satisfy the American decree, why did not the attorneys for the judgment creditors insert that agreement in plain and unequivocal language in the agreement itself or obtain from the judgment debtor a separate agreement to that effect as to which there could have been no possible doubt?

Moreover, the so-called " reservation clause " cannot be held to be a contract binding upon the judgment debtor for the reason that there was no valid consideration for it. The attorney for the

respondent urges that the consideration for the alleged agreement was the promise of the judgment creditors to the judgment debtor to thereafter abstain from prosecuting their right to collect the debt in France. Certainly this was no consideration for the agreement. Upon the payment of the French judgment the rights of the creditors to enforce the collection of the debt it represented ceased. They could not thereafter collect it. Any promise to refrain from its collection was, therefore, merely a promise to refrain from doing what they were legally bound to refrain from and afforded no consideration for the alleged agreement of the judgment debtor. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Robinson* v. *Jewett*, 116 id. 40; *Jaffray* v. *Davis*, 124 id. 164; *Dixon* v. *Walker*, 206 App. Div. 565; *Schwartzreich* v. *Bauman-Basch, Inc.*, 231 N. Y. 196, 202.)

I, therefore, decide that the payment of the French judgment by the judgment debtor on December 15, 1925, satisfied the decree of this court, dated November 3, 1917, in so far as it awarded $65,133.25 and interest to George W. Pratt de Gasquet James and $65,133.25 and interest to Pauline Andree de la Mettrie, and that the executions heretofore issued and now outstanding in behalf of said parties for the collection of said amounts and interest should now be vacated, with $10 motion costs to the moving party. I direct the clerk of this court to mark said decree satisfied to the extent indicated upon the records of this court, and to note the vacation of executions as above indicated thereon.

A decree is directed to be entered accordingly.