**UNITED STATES, for Use and Benefit of PIERCE STEEL PILE CORPORATION, v. I. B. MILLER, Inc., et al.**

**No. 221.**

Circuit Court of Appeals, Second Circuit.

Jan. 13, 1936.

Louis Rosenberg, of New York City (Herbert M. Rosenberg, of New York City, of counsel), for appellants.

Nevius, Brett & Kellogg, of New York City (Franklin Nevius and Asa B. Kellogg, both of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

I. B. Miller, Inc., a New York corporation, for convenience referred to hereafter as Miller, contracted with the United States to do the demolition, excavation, and foundation work on the Parcel Post Building in New York City for a stated sum. Any required additional work was to

be done on a cost plus basis. The specifications provided that piling should be driven to "solid rock," and if conditions were found that "necessitate a modification in the contract requirements an adjustment will be made on the basis of the difference in cost as determined on the job, plus ten (10) per cent. overhead and ten (10) per cent. profit." By subcontract Miller let the driving of piling to Pierce Steel Pile Corporation, hereafter called Pierce, which undertook to do the work for $215,000. Pierce's letter of April 4, 1931, which forms part of the subcontract, states that this figure was arrived at by applying unit prices for various sizes of piling to the estimated lineal footage as shown on the plans and specifications of Miller's contract with the United States, which indicated the supposed rock contours but did not guarantee their correctness. The letter of April 4th provided:

"Our estimated footage of various sizes is based upon the plans and specifications. If it is necessary to drive more footage of pipe to actually reach satisfactory rock bearing, we will of course expect to be paid for the additional piling at these unit prices to which you will be entitled to add 10% for your overhead and 10% profit in accordance with the terms of your general contract. Any other additional work not covered by these unit prices will be done at a price to be agreed with the contracting officer through you.

"This agreed price is to be your cost to which you will add 10% for overhead and 10% for profit."

As the work progressed, Pierce soon found that rock bearings were many feet lower than the elevations indicated on the plans, and that the rock was overlaid by a thick bed of unusually stiff hardpan, to penetrate which required the use of methods more expensive and not ordinarily employed in driving steel piling. By letter dated May 14, 1931, Pierce offered to furnish and drive the additional lengths of piling "below the contract elevations as called for on the plans" for unit prices much higher than those stated in its letter of April 4th. Miller submitted these prices to the government engineer in charge, and, his approval having been obtained after a job test, agreed with Pierce to pay for additional footage and extra piles at the prices set forth in Pierce's letter of May 14th. Pierce completed the piling work, and Miller used the May 14th unit prices,

adding thereto $1 per lineal foot (for the removal of spoil), plus 10 per cent. for overhead and 10 per cent. for profit in collecting from the United States. The present controversy relates to the balance due from Miller to Pierce under their contract; the single question being whether Pierce is entitled to be paid for additional footage and extra piles at the higher unit prices stated in its letter dated May 14th or the lesser unit prices stated in the letter of April 4th. The District Court directed a verdict on the basis of the higher prices. The defendants contend that the agreement by Miller to pay them was void for lack of consideration. It is stipulated that the sums in dispute are $26,201.65 for additional footage of piling and $6,908.24 for extra piles.

The item for extra piles, that is, piles in excess of the number required by the plans and specifications, was properly allowed in any event. The above-quoted provision of the letter of April 4th forming part of the subcontract, upon which the defendants rely to establish lack of consideration for Miller's later agreement to pay higher unit prices, did not specify unit prices for extra piles. The unit prices related only to "more footage of pipe to actually reach satisfactory rock bearing." The extra piles fall within "any other additional work" which was "to be done at a price to be agreed with the contracting officer through you." As the government engineer in charge approved the higher prices and the United States paid for extra piles on this basis, Judge Patterson properly held that this was the price "agreed" for such extra work.

The appellants' argument as to the item for additional footage of piling driven below the assumed rock elevation cannot be so easily disposed of. If, as they contend, Pierce was already bound to drive the piling to solid rock at the unit prices specified in the letter of April 4th, a second promise to do the same work furnished no consideration for Miller's promise to pay the higher prices set forth in the letter of May 14th. Am. Law Institute, Restatement, Contracts, § 78; 1 Williston, Contracts, § 130; Stilk v. Myrick, 2 Camp. 317; Vanderbilt v. Schreyer, 91 N.Y. 392. Although this rule is generally recognized, its application has frequently been avoided by finding some form of consideration when the situation was such that performance would entail unexpected hardship and the con-

tractor's request for additional compensation was not coercive or morally blameworthy. See Schwartzreich v. Bauman-Basch, Inc., 231 N.Y. 196, 131 N.E. 887; Sasso v. K. G. & G. Realty & Const. Co., 98 Conn. 571, 120 A. 158; Linz v. Schuck, 106 Md. 220, 67 A. 286, 11 L.R.A.(N.S.) 789, 124 Am.St.Rep. 481, 14 Ann.Cas. 495; Michaud v. MacGregor, 61 Minn. 198, 63 N.W. 479; King v. Duluth, M. & N. R. Co., 61 Minn. 482, 63 N.W. 1105; Meech v. City of Buffalo, 29 N.Y. 198; Osborne v. O'Reilly, 42 N.J.Eq. 467, 9 A. 209; 33 Yale L.J. 78. But, in the view we take of the subcontract, a discussion of the doctrine of consideration is unnecessary. The District Judge avoided the argument of lack of consideration by construing as a condition upon Pierce's obligation to drive additional footage at the unit prices stated in the letter of April 4th, the clause declaring that Miller will be entitled to add to them 10 per cent. for its overhead and 10 per cent. for its profit. Since Miller used the higher rates as his cost to the United States, it was held that this condition was not performed and that Pierce was left freed from any obligation to do the work at the lesser rates; hence consideration was found for the later agreement. Although this court is unable to accept such construction, we agree that the judgment should be affirmed, but upon a different ground.

In our view, the subcontract and the letter of April 4th which formed part of it did not obligate Pierce to drive through a thick layer of hardpan at the same unit prices as through ordinary soil. The presence of this hardpan had not been disclosed by the test borings, which ran only to the assumed rock elevations. In providing for "more footage of pipe to actually reach satisfactory rock bearing," the parties contemplated possible irregularities in the rock contours necessitating additional lengths of piling, but they did not contemplate driving them through a layer of exceedingly stiff hardpan necessitating unusual and much more expensive methods of work. While a promissor assumes certain risks, his words must be interpreted reasonably and in the light of their context and the circumstances under which they are uttered. See Montrose Contracting Co. v. County of Westchester (C.C.A.2) 80 F. (2d) 841, handed down January 6, 1936. It would be unreasonable to suppose that a linear foot price for driving through ordinary soil was intended also to cover work of the very different character required to penetrate the layer of hardpan; and particularly when the contract also included a clause that "other additional work" was to be done at a price to be agreed to by the government's contracting officer. The presence of this clause lends support to the construction that the promise to drive additional piling at the linear foot rates fixed for the estimated footage was meant only for sinking the piling through ordinary soil, for the later clause can reasonably apply to unusual work below the estimated footage necessitated by uncontemplated conditions. This construction is confirmed by the parties' conduct when the hardpan was discovered. Both sides at once recognized that the task of driving through hardpan was not covered by the clause as to "additional piling." They fixed another scale of prices—subject to approval by the government—and Miller got the engineer in charge to approve such scale after a job test and the government accepted them and paid Miller on that basis. While it is true that "practical construction" by the parties has its limits (Brainard v. New York Central R. Co., 242 N.Y. 125, 133, 151 N.E. 152, 45 A.L.R. 751), in the context here presented the interpretation they adopted was a fair one, and is entitled to great weight. See Brooklyn Life Ins. Co. v. Dutcher, 95 U.S. 269, 274, 24 L.Ed. 410. In this view Miller's obligation to pay the higher unit prices for "additional piling" rests on the same ground as his obligation to pay them for the "extra piles"; it was the price "agreed with the contracting officer" through Miller for "other additional work" pursuant to the terms of the letter of April 4th which formed part of the subcontract.

Judgment affirmed.