That the state may, in the exercise of its undoubted power to regulate the taking of fish and game, prescribe the times and the conditions of catching and killing wild animals or fish, and may even limit the individual right of property in such fish or game, will not be disputed. The doctrine has been settled by the court in the case of Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793, affirming the judgment of the supreme court of that state. This does not, however. justify the state in enacting laws which in effect prohibit interstate and foreign commerce; and the demurrer in the case at bar should be overruled, with costs to the defendants.

---

(47 App. Div. 567.)

PERRY v. BANKERS' LIFE INS. CO. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

LIFE INSURANCE POLICY—FORFEITURE—NONPAYMENT OF PREMIUM.

A life insurance policy provided for the payment of premiums quarterly, but not on any specified date, and contained no specific provision of forfeiture, if any premium was not paid at a particular day. On the back of the policy was an indorsement stating that the premiums were due on certain fixed dates. It also provided that any unpaid premium would be deducted in settlement of the policy, and it was customary, when a premium had not been paid at the beginning of a quarter, to send a notice of the fact to the insured. Held, that the insurance company could not insist on a forfeiture of the policy for nonpayment of the premium, where death occurred six days after the beginning of a quarter for which the premium had not been paid.

Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by Marie B. Perry against the Bankers' Life Insurance Company of the City of New York. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Roger Foster, for appellant.
Herbert H. Gibbs, for respondent.

RUMSEY, J. The action was brought to recover on a policy of life insurance issued to the plaintiff's husband in September, 1895, and payable at his death to her. The insured died on the 27th of March, 1898. The necessary steps were taken to entitle the plaintiff to the payment of the policy, and the only defense is that it has been forfeited by nonpayment of the premium said to be due on the 21st day of March, 1898. The learned justice at the trial term held that the defendant was estopped by its manner of dealing from insisting that the payment was not made in time, and for that reason he ordered a judgment for the plaintiff for the amount of the policy. From that judgment the defendant appealed.

The policy was made on the 21st day of June, 1895, upon an application which is found in the case, and dated the 24th of April in the same year. It was stated in the application that the premiums

were to be paid quarterly ($23.50). The policy purports to have
been issued in consideration of the application, and of all statements
made therein and to the medical examiner, and of the stipulations
and agreements on the back of the policy, all of which were made a
part of the contract, and in further consideration of the sum of $23.50
in full payment of the first premium on this policy from this date
until the 21st day of September, 1895, and the further payment of
all premiums coming due on this policy in accordance with its terms
and the constitution and by-laws of the company. The policy itself
contains upon its face nothing further with regard to the payment of
the premiums. There is upon the back of the policy something over
a page of print, which is headed, "Stipulations and Agreements."
All that is said with regard to the payment of premiums in these
stipulations is that they may be paid annually, semiannually, or
quarterly, in accordance with the rates in the following table, sub-
ject to deduction by dividends as aforesaid; and that any unpaid
semiannual or quarterly installment of the current year's premium,
or any indebtedness to the company, will be deducted in the settle-
ment of the policy; and the further provision that each premium is
due and payable at the home office of the company, but, for conven-
ience, it will be accepted by an authorized agent at some other place.
There is nothing else, either in the policy or in the stipulations and
agreements, with regard to the payment of premiums. The by-laws
contain a provision that premiums must be paid on the day they be-
come due by the terms of the policy, and a failure to pay the same
on that day will work a forfeiture of the policy and all benefits
thereunder. But this provision is not made a part of the policy, by
its terms.

It is alleged that a premium which was due on the 21st of March,
1898, was not paid, and for that reason it is said that the policy had
become forfeited. The rule is well settled that no strained or forced
construction of a contract will be resorted to for the purpose of
establishing a forfeiture, but that, to warrant a party in insisting
that his adversary has forfeited any rights which he would be entitled
to by a contract between them, he must put his finger upon the spe-
cific provision of the contract which requires the party against
whom the forfeiture is alleged to do the thing the failure to do
which is relied upon to work a forfeiture. The breach of the con-
tract here, upon which the defendant insists as constituting a for-
feiture, is a failure to pay the premium when it became due by the
terms of the policy, and so it is essential to see when it did become
due by those terms of the policy.

It will be noticed that there is no direct agreement on the part of
the plaintiff, nor any requirement in the policy, or in the stipulations
and agreements which are made a part of it, or in the application,
that the premiums shall be paid on any particular day. The amount
of the premiums is fixed. It is to be $23.50, payable quarterly; and
the first premium paid at the date of the policy is said to be a pay-
ment up to the 21st day of September, 1895, and it is said that the
other premiums are to be paid quarterly. But it is nowhere said,
either in the application or the policy or the stipulations and agree-

ments, that they are to be paid on any particular day; and from the provision in the stipulations and agreements, that any unpaid quarterly installment of the current year's premium will be deducted in settlement of the policy, it is fairly to be inferred that there was in the minds of the parties at the time the contract was made an intention that the quarterly premiums might not necessarily be paid at the end of the quarter, which in this case was the 21st of March, 1898.

In order to establish that the payment of the premiums was to take place on the 21st of March, the defendant resorts to an indorsement on the back of the policy, which is as follows:

"No. 1,544.  Bankers' Life Insurance Company of the City of New York. Insurance on the Life of N. W. Perry.

"Amount, $5,000.

"Premium, $23.50.

"Payable on the 21st day of June, Sept., Dec., Mch.

"Dated June 21, 1895."

This is the usual indorsement put upon every insurance policy by the company before it is issued, and, although it is on the back of this policy, it is no part of the stipulations and agreements, which alone are made a part of the policy, and constitute the contract between the parties.  Therefore, although this indorsement may be regarded, perhaps, as a suggestion of what was intended by the defendant, it cannot, except by a very strained construction, be said to be any part of the policy, so as to be binding upon the plaintiff, or to constitute any of its terms, so that a violation of a suggestion contained in it shall be sufficient to forfeit the policy.  But it is said that a construction has been put upon the policy by the act of the parties, as the result of which the premium became payable on the 21st of March, 1898.  It is undoubtedly true that a notice was given to Perry, from time to time, that a particular premium coming due at a particular time had not been paid; and it is quite probable that whenever he received that notice he complied with the demand of the defendant by giving it a certificate of health, if he paid the premium after the 21st day of the month.  But those acts do not constitute any part of the terms of the policy, for the purpose of authorizing a forfeiture.  If, when this notice had been served upon Perry, he had said that the contract did not provide for the payment of a premium on the 21st day of September, 1895, but that he had a reasonable time to pay it, no one could have said that he had violated the terms of the policy; and the fact that he acceded to this demand does not change his rights to insist upon the precise terms of the policy, when the defendant tries to forfeit the terms of the contract.

The judgment must be affirmed, with costs.  All concur, except PATTERSON, J., who dissents.

PATTERSON, J. (dissenting).  This action was brought by the beneficiary named in a policy of life insurance to recover the amount of insurance therein granted upon the life of Nelson W. Perry, her husband.  The policy was issued by the defendant, is dated the 21st day of June, 1895, and reads as follows:

"No. 1,544. Bankers' Life Insurance Company of the City of New York.
"Amount, $5,000.                                              Age, 42.

"In consideration of the application for this policy, and all statements made
therein and to the medical examiner, and of the stipulations and agreements
on the back of this policy, all of which are made a part of this contract, and
in further consideration of the sum of twenty-three dollars and fifty cents, in
full payment of the first premium on this policy, from its date until the twenty-
first day of September, 1895, and the further payment of all premiums coming
due on this policy in accordance with its terms and the constitution and by-
laws of the company, promises to pay to Marie B. Perry, wife of the insured,
her executors, administrators, or assigns, the sum of five thousand dollars (less
any indebtedness on account of this policy), within ninety days after acceptance
at the home office of the company in the city of New York of satisfactory
proofs of death of Nelson W. Perry, of Hillsdale, state of New Jersey (the in-
sured under this policy), during the continuance of this policy.  *  *  *"

There were certain stipulations and agreements on the back of
the policy, among which was one that premiums may be paid an-
nually, semiannually, or quarterly. "Any unpaid semiannual or
quarterly installment of the current year's premium, or any indebt-
edness to the company, will be deducted in the settlement of this
policy." Indorsed on the policy was the following:

"No. 1,544. Bankers' Life Insurance Company of the City of New York.
Insurance on the life of N. W. Perry.
"Amount, $5,000.
"Premium, $23.50.
"Payable on the 21st day of June, Sept., Dec., Mch.
"Dated June 21, 1895."

In the by-laws of the defendant, subject to which the policy was
issued, it is provided in the article relating to forfeitures as follows:

"Sec. 18. Premiums must be paid on the day they become due by the terms
of the policy, and a failure to pay the same on that day will work a forfeiture
of the policy and all benefits thereunder."

It appears that the assured, electing to pay premiums quarterly,
paid the first quarterly premium in cash, and he paid the three sub-
sequently accruing quarterly premiums on the 21st days of Sep-
tember, December, and March, respectively, they being the dates
named on the indorsement of the policy as those upon which the
quarterly premiums were to be paid. During the second year of
the currency of the policy, he paid the first quarterly installment on
July 15, the second on October 21, 1896, and the third and fourth
on January 20 and April 21, 1897, respectively. During the third
year of the currency of the policy he paid the first, second, and third
installments, of $23.50 each, on July 21, October 21, 1897, and Jan-
uary 18, 1898, respectively. Thus it appears that after March, 1896,
none of the quarterly premiums were paid on the particular dates
named as the due dates in the above-mentioned indorsement on the
policy. The last payment made by the assured on the policy was
on the 18th of January, 1898. He died on the 27th day of March,
1898. After his death, and on the 11th of April, 1898, the plaintiff
tendered to the defendant a sum of money, which the trial court
has found to be the fourth quarterly installment of premium for
the current year ending June 21, 1898. The tender was declined on
the ground, as would appear from a specific defense set up in the

answer, that the policy lapsed by reason of the failure of the assured to pay, at the required time, a quarterly premium which the defendant asserts fell due on the 21st of March, 1898. The defendant refusing to recognize any existing claim upon this policy, the plaintiff brought her action, declaring upon the policy itself, and upon the contract thereby made, and also in her complaint making allegations of a modification of the strict terms of the contract (if there were such terms), brought about by a course of dealing had between the defendant and the assured, constituting a claimed new arrangement, with respect to the particular times at which the quarterly premiums were to be paid, in order to keep the policy alive. The learned trial judge made the following, among his findings of fact, namely:

"(4) That it was the custom and practice between the said insured and defendant, after the first premium year, for the insured to pay the said quarterly installments of annual premium, and for the defendant to receive the same at its home office, within thirty days from and after the 21st days of June, September, December, and March, respectively, in each premium year."

In his conclusions of law he determined that:

"Under the course of dealing adopted and followed by the insurer and insured as to the time and manner of paying the quarterly installments of premium, the policy of life insurance sued on herein did not lapse, but was in force when the insured died; and, by reason of the course of dealing aforesaid, the defendant waived and relinquished its right, if any it had, to insist upon or require payment of a quarterly installment of premium upon the 21st day of March, 1898."

The opinion of the learned trial judge shows that his decision of the cause was placed altogether upon the relationship of the parties, as affected by the question of waiver. The conclusion he reached upon that subject, we think, was not justified by the evidence, when that evidence is examined in the light of the authoritative decisions of the courts announcing the principle upon which new contract relations as to the payment of premium may be said to be established between an insurer and the assured, in consequence of a waiver of strict performance as to the time and method of paying premiums. Waiver of payment of premium upon the day on which it falls due, inferred from a course of dealing established between the parties, results from the fact that, by some arrangement, declaration, or course of action on the part of the insurer, a party insured is honestly led to believe that, by conforming to such agreement, declaration, or course of dealing, a forfeiture of his policy will not be incurred; and, where that is followed by conformity on his part, the insurer will not be permitted to insist upon a forfeiture, although it might be claimed under the express letter of the contract. That rule was announced in the case of Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841, in which it is also said that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. That rule was substantially reiterated in the case of Insurance Co. v. Doster, 106 U. S. 35, 1 Sup. Ct. 18, 27 L. Ed. 65. In the supreme court of the United States, such a waiver seems to have been placed upon the

ground of estoppel. In the court of appeals of this state (Titus v.
Insurance Co., 81 N. Y. 419), the rule is announced in the follow-
ing terms:

"But it may be asserted broadly that if in any negotiations or transactions
with the insured, after knowledge of the forfeiture, it (the insurer) recognizes
the continued validity of the policy, or does acts based thereon, or requires
the insured, by virtue thereof, to do some act or incur some trouble or ex-
pense, the forfeiture is, as matter of law, waived; and it is now settled in
this court, after some difference of opinion, that such a waiver need not be
based upon any new agreement or an estoppel,"—citing Allen v. Insurance
Co., 12 Vt. 366; Webster v. Insurance Co., 36 Wis. 67; Gans v. Insurance Co.,
43 Wis. 109; Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; Goodwin v.
Insurance Co., 73 N. Y. 480–493; Prentice v. Insurance Co., 77 N. Y. 483; Brink
v. Insurance Co., 80 N. Y. 108.

In Armstrong v. Insurance Co., 130 N. Y. 564, 29 N. E. 991, it is
said that:

"The rule is now established, however, that if in any negotiations or trans-
actions with the assured, after knowledge of the forfeiture, it recognizes the
continued validity of the policy, or does acts based thereon, or requires the in-
sured to do some act or incur some trouble or expense, the forfeiture is waived"
(citing cases).

And it is also said in that case that:

"While the later decisions all hold that such waiver need not be based upon
a technical estoppel, in all the cases where this question is presented, where
there has been any express waiver, the fact is recognized that there exists the
elements of an estoppel" (citing authorities).

The case principally relied on by the plaintiff to establish the
waiver is De Frece v. Insurance Co., 136 N. Y. 144, 32 N. E. 556.
There the defendant set up a different arrangement respecting the
payment of premiums than that contained in the policy. The only
evidence to establish the new arrangement showed that for a pe-
riod of five years the insured paid quarterly, instead of annual, pre-
miums, and that they were received and accepted by the defendant,
and receipts given for them, and that those premiums were paid at
intervals of from 20 days to 5 months after they became due; and
it was held that, while the evidence was sufficient to show a modifi-
cation of the original agreement respecting the time of payment, it
also established an agreement on the part of the defendant to re-
ceive payments after they became due, if made within a reasonable
time, and that consequently no forfeiture was established. But the
question comes back to the consideration of the point whether any-
thing done by the insurer fairly and honestly authorized the as-
sured to believe that his premiums would be accepted in all in-
stances when payment was delayed or overran the stipulated time
contemplated in the original contract between the parties. The
proofs in this case show conclusively that there was nothing in the
course of dealing between this defendant and the assured which
would authorize or justify him in the belief that forfeitures were ac-
tually or absolutely waived if the premiums were not paid ad diem,
or that an extension of time for the payment of those premiums
would be granted when each fell due according to the contract be-
tween the parties. The documentary evidence before us shows
that, after the first so-called "premium year," when quarter annual

payments were not made on the dates named in the indorsement on
the policy a notification to that effect was given to the assured, and
in the same notification the assured was informed that the com-
pany would accept the quarter annual payment to which the notice
applied if paid at its office on or before a certain date, subject to
an interest charge of 6 per cent. for the number of lapsed days, and
provided that the assured should sign a health warranty annexed,
and file the same, together with the notice, at the time of making
payment; and the notice also contained an express provision that
it was not to be construed as extending the dates on which future
premiums might fall due, the company reserving to itself the right
to refuse or accord further extensions at its option. With each of
these notices was sent a paper called a "health warranty." On the
receipt of them the assured would sign the health warranty, which
recited that he (the assured) desired to take advantage of the offer
made as contained in the notice, and proceeded as follows:

"And in conformity therewith I hereby declare and warrant that I am now
in good health, and that nothing has occurred to impair my health since the
time that said delinquent premium fell due; and I agree that my policy shall
not be deemed in force unless I am alive and in good health at the time said
premium is received at the home office of the company, in the city of New
York; and I further agree that the foregoing warranty and agreement shall
be considered by the company as an amendment to, and is hereby made a
part of, my application for and policy of insurance."

Now, the situation of the parties under these notifications, and
the action of the assured, show conclusively that there was no
course of dealing instituted between them by which the assured
could be led to believe that an extension of the time of the pay-
ment of each overdue premium would be accorded to him. Each
notice expressly contained the declaration that it should not be
regarded as a precedent for future action. Each acceptance of the
grace of the insurance company was based upon the condition that
the assured was in good health, that nothing had occurred to im-
pair his health, and that the policy should not be deemed as being
in force unless he was alive and in good health at the time the pre-
mium reached the office of the insurer. In other words, the assured
knew that in each and every instance the continuance of the policy,
as an enforceable contract against the underwriter, would depend
upon his being alive at the time the unpaid quarterly premiums
reached the company, and that each extension of time stood as a
separate, isolated, independent thing, and should not be construed
as indicating a general course or general policy, which would per-
mit him to be dilatory in the payment of his premiums.

We must take the transaction between the parties as it was, and
not distort it to favor the contention of an assured against the ex-
press terms upon which the extensions were granted. The arrange-
ment must be so regarded that the intent of both parties to it will
be effectuated, and it is plain that both did intend that each exten-
sion should stand as a separate thing, and that the company should
not be bound to a new arrangement, except upon the precise terms,
time and time again reiterated, expressed in the notifications to,
and acceptances by, the assured of the privileges granted of paying

the quarterly premiums within 30 days after the dates at which they became due. The acceptances of the assured (on this branch of the case) constitute recognitions of the claim of the insurer that the policy had become forfeited by the nonpayment of the premium at the due dates, or, in other words, that the policy had lapsed. Such was the decision in Teeter v. Association, 159 N. Y. 411, 54 N. E. 72, in which it was held that where a contract of life insurance provides that the policy shall lapse on the failure of an assured to pay certain assessments, and that it may be reinstated at the option of the company, and the company notifies the insured that his policy has lapsed, and that before he can be given credit for an assessment which has been sent he must sign and return a health certificate, and the insured signs and remits the health certificate, he thereby recognizes the claim that the policy has lapsed, and consents to its reinstatement, and the retention of his assessment on the basis of a reinstated policy. That rule would apply here. Time and again the assured was notified that at a particular date his premium was due and was unpaid, and that it would be accepted if paid at a certain time, under certain conditions; his acceptance of those conditions to be testified to by his signing a particular document. He deliberately stated that he accepted the arrangement. He signed the certificates, and transmitted them, and thereupon his premium was received, and his policy continued, and thus, when the last premium was paid preceding his death, it was so paid under the distinct understanding that it should not be regarded as a precedent for any future premium, and all that he was entitled to believe and to act upon was that if he were alive and in good health, and a premium should be paid to the company, and actually received by it, before his death, then the policy should not lapse, but be regarded as in full force. Under those circumstances, it cannot be said that any such course of dealing or business was instituted between these parties as would entitle the assured or the beneficiary to rest upon the claim that the payment of the premium had been extended and a forfeiture waived.

Another question, however, is raised on this appeal which did not enter into the consideration of the court below, but which is properly here. It arises upon a construction of the policy. It is urged that the quarterly premiums did not fall due on specific dates; that the policy itself provides that the quarterly premiums are to be paid according to its terms, or according to its terms as associated with the conditions and agreements indorsed upon the policy, or of the constitution and by-laws of the defendant, with reference to the payment of premiums and the forfeiture of a policy for the nonpayment of such premiums. There is nothing in the policy itself, nor in the constitution and by-laws or stipulations or agreements, specifying the precise dates at which the quarterly payments of premiums shall be made, from which circumstance an inference is sought to be drawn that the assured had the right to make those payments at any time within the quarter. All that the policy says respecting the time at which the payments shall be made is that "the sum of $23.50 is in full payment of the first premium on this policy from this date until the 21st

day of September, 1895." It is quite apparent that first premium paid for the insurance only until the 21st of September, 1895. Further payments were then required; for the policy recites that it is issued in consideration of that payment, and the further payment of all premiums coming due on this policy in accordance with its terms and the constitution and by-laws of the company. It cannot be assumed that the defendant would carry this insurance without the payment of premium after the expiration of the three months for which the insurance was paid by the first premium. If the premium were an annual one, payable in quarterly installments, it would seem to follow, as a matter of course, that those installments were payable in advance. The reasonable interpretation of the contract would seem to be that this policy made insurance from quarter to quarter, the subsequent premiums after the first to be paid in the same manner as the first. It is said in Holly v. Insurance Co., 105 N. Y. 444, 11 N. E. 507, that punctuality in the payment of premiums, in the case of a life insurance company, is of the very essence of the contract, and, when payment is not made at the time, the company has the right to forfeit, if such is the contract. Attorney General v. Insurance Co., 82 N. Y. 172; People v. Insurance Co., 103 N. Y. 480, 9 N. E. 35; Insurance Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789. But, if this strict construction of the contract is not independently justified because of the peculiar phraseology of the policy as to the premiums subsequent to the first being payable in accordance with the terms of the policy and the constitution and by-laws of the company, we have the clearest possible proof of what the parties meant and intended by their contract in their acts under that contract and their own interpretation of it. On the back of the policy is a distinct notification to the assured of the exact days on which the quarterly premiums fell due, and, while that indorsement may not be regarded in strictness of law as a part of the contract itself, yet it was a notification to the assured of what the company understood to be his obligation to it with respect to the time of payment of those premiums. It must be said with reference to the terms of the policy, that they are, at least, ambiguous or indefinite, and in such a case what was remarked by Judge Peckham in Woolsey v. Funke, 121 N. Y. 92, 24 N. E. 191, is directly applicable, viz.:

"But, if I am not clearly right in this interpretation of the language, it must be admitted, as it seems to me, that the language is somewhat ambiguous or indefinite. Under such circumstances, the practical interpretation of this agreement by both parties is a consideration of very great importance. As was said by Mr. Justice Swayne in Insurance Co. v. Dutcher, 95 U. S. 269, 273, 24 L. Ed. 410: 'The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant than to see what they have done.'"

And in Nicoll v. Sands, 131 N. Y. 24, 29 N. E. 818, the same learned judge says that "the practical construction put upon a contract by the parties to it is sometimes almost conclusive as to its meaning." What this policy meant, and what was agreed upon by the parties respecting the time of payment of the premium, is established by the acts of the assured. He knew and recognized that those premiums were payable at certain fixed dates; he knew and recognized the fact

that the policy was forfeited by the nonpayment of the premium at those dates; he accepted in many instances the grace of the company in the re-establishment of the policy, by paying those premiums, under certain conditions, after the policy had lapsed; and the custom and dealing between the parties, under their interpretation of the terms of the contract, shows that it had lapsed before his death, and that it could not be reinstated, and the company was absolved from liability upon it, at the time the assured died; for he was incapable of performing those conditions under which alone the policy could have been re-established and made enforceable.

I think, therefore, that the plaintiff was not entitled to recover on this policy, and that the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.