ULYSSES SAYER, Appellant, *v.* CLARENCE E. SUNDERLAND and Others, Respondents.

Third Department, March 2, 1927.

Contracts — action on contract between plaintiff and fifty-two farmers in reference to delivery of milk by farmers to plaintiff — body of contract calls for delivery from 800 cows — total of number of cows following signatures was less than 800 — parol evidence that less number was agreed to by parties before execution of contract was not improperly admitted — plaintiff waived performance of strict terms by acceptance of milk from lesser number of cows — contract is ambiguous and parol evidence was properly admitted to show real intent — contract was under seal — evidence of parol modification at time of execution was properly admitted where it was shown that modification was followed by performance — evidence justified finding that plaintiff did not comply with contract in reference to equipment of building as shipping station.

This is an action on a contract between the plaintiff and fifty-two farmers for the delivery of milk to the plaintiff. The contract provides that the plaintiff should build a suitable building for a butter and cheese factory and milk shipping station. The body of the contract stipulated that the farmers agreed to deliver milk from

800 cows. After the contract had been circulated, it was found that the total of the number of cows following the signature of each farmer was less than 800. It was not error to admit evidence that before the execution of the contract it was agreed that the contract would be complied with by the delivery of milk from less than 800 cows.

The evidence shows that the minds of the parties met on the total of the number of cows following the signatures of the farmers and that the plaintiff accepted the contract on that basis and executed it, believing that enough more farmers would come in on the contract to make up the required number.

There was a waiver of performance of the strict terms of the contract in reference to the total number of 800 cows, for it appears that some months after the execution of the contract and when the factory had been built and equipped, the plaintiff accepted milk from a lesser number of cows. Evidence to that effect was properly admitted.

Furthermore, the contract was ambiguous in reference to the number of cows and it was proper to admit evidence to explain that ambiguity.

While the contract was under seal, it was not necessary that it should be sealed. It was proper to admit parol evidence to show a modification of the agreement made at the time it was executed, since it was also shown that the contract was performed as modified and the plaintiff continued for some years to accept milk from a lesser number of cows.

Furthermore, the evidence tends to show that the plaintiff did not perform that part of the contract which required him to equip the buildings as a shipping station for liquid milk.

APPEAL by the plaintiff, Ulysses Sayer, from a judgment of the Supreme Court in favor of the defendant George Childs, entered in the office of the clerk of the county of St. Lawrence on the 28th day of November, 1923, upon the verdict of a jury; also from a separate judgment in favor of the other defendants, entered in said clerk's office on the same day, upon the verdict of a jury, and also from an order denying plaintiff's motion for a new trial made upon the minutes.

*Lawrence Russell* [*Francis E. Cullen* of counsel], for the appellant.

*George E. Van Kennen,* for the respondents.

DAVIS, J. The plaintiff seeks to recover damages for breach of contract. The contract was made in November, 1916, between the plaintiff and fifty-two farmers in the vicinity of Rensselaer Falls, St. Lawrence county. It provided, in brief, that the plaintiff would build, equip and maintain for eight years a suitable building for a butter and cheese factory and milk shipping station, and that the farmers signing the contract would deliver milk from their dairies to him at the building. It did not purport to contain definite provisions as to all details of the agreement. Nothing was said as to how and by whom the manufactured product or the liquid milk was to be sold; the price to be paid for manufacturing was stated at the " ruling price; " and the delivery of the milk was to be " according to the usual dairy custom in the neighborhood."

In many respects there is little dispute between the parties as to the actual facts. Their differences on the trial chiefly arose over the legal principles to be applied.

The breach complained of pertains to the failure of the defendants to deliver milk from the number of cows mentioned in the contract. The principal controversy arises over the number of cows agreed upon. In the body of the written contract the defendants undertake that there shall be delivered the milk of 800 cows. On the trial the defendants offered proof that another number had been agreed upon between the parties prior to the execution of the contract. The evidence was admitted; and this it is said constitutes error requiring reversal of a judgment in favor of defendants.

There is no doubt that the general rule is that parol evidence is not admissible to show prior negotiations or to vary the terms of a complete written contract. On this subject it has been said: " The opinions of judges are cumbered with citations of cases which serve no purpose there except to prove what is not disputed,— the general principle." (Wigm. Ev. § 2442.) Of course the rule is not operative in cases of fraud, mistake and the like, although those questions are not presented here. The question is, may this be regarded as a typical case?

The facts relative to the origin of this contract are not in dispute. The plaintiff was soliciting the opportunity to engage in a business enterprise, drawing his support from the farmers. Meetings were held for the purpose of enlisting their interest in erecting and equipping this factory. When sufficient interest had been aroused, plaintiff prepared the written contract in question and it was circulated by a committee of the farmers to obtain signatures. As each man signed he put down in a column provided for the purpose the number of cows whose milk he undertook to deliver. Slight changes were made in the contract at the suggestion of the signers, the most important being that the new building should be equipped as a shipping station so that liquid milk could be sent to the markets of New York city. The contract contained the provision already referred to relative to 800 cows. When the countryside was canvassed, the committee found that they had a maximum number of 614 and a minimum number of 576, the difference arising from the fact that two men had signed " 1 to 20 cows." The committee stated to plaintiff that it was impossible to obtain the number mentioned in the contract; that they had done the best they could; that additional dairies might come in to make up the deficiency, and it was up to him to say whether he would build his factory and perform with that number.

Plaintiff said he would accept the contract because there would be enough more come in to make it good. It was under these circumstances that the committee then delivered over the contract to him, and he signed it without changing the number " 800."

There can be no doubt that as to the detail of the contract relative to the number of cows, the minds of the parties met on the aggregate number following the signatures, and plaintiff ran his own chances on getting additional dairies from farmers not signing. This number rather than the tentative 800 was included in the integration of the contract. Can this be given effect, or must the formalism of a general rule defeat it? Must the parties be held to abide a bargain they never made, by rigid adherence to a general principle that the written word may not be varied by parol evidence tending to show what the actual agreement was? There are several grounds for believing that this is an exception to the typical case, and that evidence was properly admitted to show the real intention of the parties and the terms of the contract that they in fact agreed upon.

(1) There was only partial integration of the contract, and it was executed and delivered on the condition that its terms were a maximum of 614 instead of a minimum of 800 cows. (Wigm. Ev. § 2430; *Reynolds* v. *Robinson*, 110 N. Y. 654; *Grannis* v. *Stevens*, 216 id. 583, 587.)

(2) There was waiver of performance of the terms stated in the writing. The contract plaintiff proposed could not be carried out in this detail. He knew this when he executed it. Furthermore, it was not until the April following the execution of the contract in November that the factory was built and equipped. Then it was that the milk of a lesser number of cows was tendered and accepted. If the facts, whenever they occurred, tend to explain the situation attending failure to observe the strict stipulated terms of the contract and to show that such failure was understood, acquiesced in and assented to by either party, the evidence is competent. (*Brady* v. *Cassidy*, 145 N. Y. 171, 180.)

(3) There is apparent ambiguity or obscurity in the terms of the contract. It is true that in the body of the contract 800 cows were definitely stated, apparently as a minimum. It is equally true that opposite the signatures and constituting a part of the contract, the parties had set down the maximum number of cows, the milk from which they would deliver. This number, as has been stated, was a lesser number than that fixed in the tentative draft of the contract plaintiff had prepared and delivered to the committee. When he executed it, he knew of this discrepancy. Which, then, was to be taken as representing the number upon which the

parties agreed? Looking only at the contract, it would be difficult to determine. The number originally written may have been the number agreed upon, but it is at least equally reasonable that the number represented by the signatures constituted the agreement on that subject. The situation presented a case for parol proof to aid the jury in ascertaining what the parties really intended, and such evidence was admissible. (*Emmett* v. *Penoyer*, 151 N. Y. 564, 569.) " Evidence as to the circumstances surrounding the execution of a contract may be given, where its terms are ambiguous " (*Ayers* v. *Palatine Ins. Co.*, 234 N. Y. 334, 337), and what may appear to be quite clear on the face of the contract may become ambiguous when the acts and conduct of the parties are considered. (*Dobbins* v. *Pratt Chuck Co.*, 242 N. Y. 106, 112.)

(4) There was modification by agreement. Although it was not the kind of a writing requiring it, the contract was under seal. The general rule is that such contracts may not be modified by parol or by other writing not under seal. (*Cammack* v. *Slattery & Bro., Inc.*, 241 N. Y. 39, 45.) Here again there is a variation from a general principle in that oral or written agreements modifying a sealed instrument are valid and enforcible if followed by performance. (*McCreery* v. *Day*, 119 N. Y. 1; *Harris* v. *Shorall*, 230 id. 343; *Archibald* v. *Panagoulopoulos*, 233 id. 478, 486.) Usually such modifications are made subsequent to the execution of the contract. Here the modification was made at the time of execution. There is no difference in principle. At no time subsequent to the execution did the number of cows whose milk was delivered by these defendants reach 800, although at certain periods that figure was reached or exceeded by counting in the dairies of others not contracting parties, whose milk was delivered. Yet the parties went on and transacted business for some years without complaint in this respect, until other causes of friction arose. There had been practical construction and performance under a modification well understood. It is now too late for the plaintiff to insist on the strict letter of the contract as originally drafted.

The defense is that the plaintiff on his part failed to perform this and related agreements, and, therefore, may not recover. The question as to whether the milk delivered was to be manufactured into butter and cheese or shipped as liquid milk was left open, to be determined by the farmers. Naturally the defendants were anxious to get the best price obtainable. The question of shipping the milk was discussed and the plaintiff agreed in writing to equip his plant as a shipping station. Subsequent negotiations related to the sale of milk in New York city. Plaintiff insisted that being better qualified, he and not the committee should have charge of

the sale. He undertook by oral agreement to ship for them when the market was right, and when better prices could be obtained by shipping than by manufacture; and the amount of his compensation was fixed. Again and again it appears the defendants asked that arrangements be made to ship their milk because of the better financial returns. This he never did. There is sufficient evidence from which the jury were justified in finding that he never suitably equipped the buildings as he had agreed for shipping the milk, and refused to ship it.

The questions of fact were determined adversely to plaintiff. There are no errors affecting any substantial right. The judgments should be affirmed, with costs.

VAN KIRK, Acting P. J., HINMAN, McCANN and WHITMYER, JJ., concur.

Judgments and order affirmed, with costs.