EMANUEL METZGER, Appellant, *v.* ÆTNA INSURANCE COMPANY, Respondent. (Action No. 1.)

EMANUEL METZGER, as Receiver of the KINGSTON CHEMICAL MANUFACTURING Co., INC., Appellant, *v.* BOSTON INSURANCE COMPANY, Respondent. (Action No. 2.)

Third Department, March 19, 1930.

*Joseph M . Fowler* [*John T. Loughran* of counsel], for the appellant.

*Ainsworth, Carlisle & Sullivan* [*Charles B. Sullivan* of counsel], for the respondents.

DAVIS, J.   In these actions to recover on policies of fire insurance tried together, verdicts for the defendants were directed.

At the time of the issuance of the policies, the Kingston Chemical Manufacturing Co., Inc. (since become bankrupt), was engaged in erecting a building to be used as a manufacturing plant.   The contract for the building was let in May, 1916, and the building was completed in the latter part of July or early in August.   The first policy of insurance issued was dated June 9, 1916.   It covered the building in process of erection and contained a builder's risk clause.   As this policy is not involved in the litigation, it is mentioned here only in relation to subsequent events.   The second policy was issued on July 5, 1916, and covered a stock of merchandise to be used in manufacturing.   This policy is the subject of another appeal (*Metzger* v. *Ætina Ins. Co., No. 3*, 229 App. Div. 26)

and we need not now make further mention of its terms. The third policy was issued on October 3, 1916, after the building had been completed and was occupied. It covered to the amount of $1,500 the risk on the building. No builder's risk clause was attached. This policy is the subject of action No. 2. The fourth policy was issued on November 1, 1916, to the individual plaintiff on a stock of merchandise and containers in the building. The coverage was $2,500. This policy is the subject of action No. 1. All four policies by their terms were to continue for the term of one year and the premium on each was one dollar and twenty-five cents per hundred. All policies were issued by the same agents.

The building and contents were destroyed by fire on February 5, 1917. No question is raised about notice or proof of loss or the amount of such loss. Instead, the defenses are that the policies here in question became ineffective before the loss by reason of the voluntary cancellation or abandonment thereof by the plaintiff, or by the failure of the minds of the parties to meet on the terms of the contract. The differences between them arose solely over the amount of premium to be paid.

The parties differ somewhat concerning certain conversations and arrangements preceding the issuance of the policies. The plaintiff says that all the conversations occurred at the time of the issuance of the policy of June ninth. The agents say that the same conversations were, in effect, repeated before the issuance of each policy. If the difference were material, we would be bound to adopt the plaintiff's version. In effect, the parties agree that at the time of issuance there was no known, fixed rate for the policies on this building because it had not been inspected; and that the rates agreed upon were tentative only. After inspection a new rate was to be fixed. At first the agents offered a proposed rate of sixty-five cents per hundred. Later plaintiff was advised the policies could not be issued at that rate but there would be a tentative rate equal to that on builder's risk policies of one dollar and twenty-five cents per hundred; but that he might apply after inspection to have it reduced; and efforts were made by the agents to get a reduction. All these conversations related to subsequent events. In the meantime the policies were issued at the tentative rate agreed upon with no reservation as to a future change. These premiums were paid.

The building was subsequently inspected and a rate was fixed by the Underwriters Association, which defendant claims had legal authority to act. (See Ins. Law, § 141, since amd.)■ Notice was

given to the agents. The latter sent to the plaintiff indorsement slips to attach to his policies which stated the rate at five dollars per hundred. The plaintiff was naturally indignant when, expecting a reduction, he had notice of a premium four times the amount written in the policy. There were high words between him and the agent. He questioned the legality of the rate and said he would take the matter up with the Superintendent of Insurance. He refused at the time to pay it, but he took the indorsement slips and attached them to his policies. In effect he agreed to pay an amended rate but questioned the amount of the one proposed. The agent threatened cancellation but the defendant, although it had the right so to do, did not take such action. There is a charge on the part of the defendants, denied by the plaintiff, that he voluntarily canceled the policies. That matter constitutes a question of fact which is not before us for review. The plaintiff testified (in answer to defendant's counsel) that if defendant had undertaken to cancel, he at all times intended to pay the new rate to save his policy; and he regarded himself legally liable for the premiums if sued. So even the question of definite refusal to pay would be one of fact. The matter drifted along until the fire with nothing done on either side. The plaintiff retained the policies. The agent claims that he made some futile attempts to obtain possession of them; and that the plaintiff agreed to give them up in token of surrender and cancellation. This the plaintiff denies. The defendant's position is that by plaintiff's failure to pay the additional premium, the contract at once terminated. The plaintiff's position is that at the time the new rate was submitted, he had already paid sufficient premium, even under the new rate, so that he was not in arrears but a balance remained in his favor; and that the acts of the defendants in failing to cancel the policies and return the unearned portion of the premium to him, recognized the fact that the policies were in full force and effect, and extended credit to him for the balance of the premiums under the new rate.

That there was no cancellation as a matter of law, either by the company or by the plaintiff with its assent, is very apparent. The policies on their face are complete in all particulars necessary to express the entire agreement. Parol evidence to vary their terms by showing prior negotiations or agreements would be incompetent as contradictory to those expressed in the writing. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Studwell* v. *Bush Co.*, 206 id. 417; *Allen* v. *City of Oneida*, 210 id. 496; *Newburger* v. *Am. Surety Co.*, 242 id. 134; *Seitz* v. *Brewers' Refrigerating Co.*, 141 U. S. 510.) But when in view of their prior arrangement regarding a substitute rate, the plaintiff took and attached to his policy the indorsement slip show--

ing an additional premium, it constituted an acceptance of the proposed modification of an original written contract not under seal. No question of consideration for the modification is raised on this appeal. It is the rule in this State that any change in an existing contract must have a new consideration to support it. The rule is different where there is rescission and a new agreement. (*Schwartzreich* v. *Bauman-Basch, Inc.*, 231 N. Y. 196, 203.) A new consideration could be readily found here. The defendant received a larger premium; the plaintiff was relieved from the danger of immediate cancellation.

The contract as modified became binding on both parties and the original provisions as to premium were waived and a new amount substituted. (*Solomon* v. *Vallette*, 152 N. Y. 147; *Archibald* v. *Panagoulopoulos*, 233 id. 478; *Lieberman* v. *Templar Motor Co.*, 236 id. 139, 147; *Sayer* v. *Sunderland*, 219 App. Div. 615, 619.) Such modifications may be made to contracts of insurance. (*Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 19 N. Y. 305; *Ludwig* v. *Jersey City Ins. Co.*, 48 id. 379.) If it can be said as a question of fact that there was no agreement on modification, then the original contract was still in force. The defendants had done nothing which as a matter of law constituted acquiescence in the alleged repudiation of the contract by plaintiff in refusing to pay the additional premium.

As the evidence stands, there was then a policy of insurance modified only as to the premium, which in spite of his protestations, the plaintiff was bound to pay. (*Train* v. *Holland P. Ins. Co.*, 62 N. Y. 598, 602.) Credit is commonly extended by agents for premiums, and the company is bound if the policy is delivered and the time of payment of the premium deferred. (*Trustees of First Bapist Church* v. *Brooklyn Fire Ins. Co., supra; Angell* v. *Hartford Fire Ins. Co.*, 59 N. Y. 171; *Squier* v. *Hanover Fire Ins. Co.*, 162 id. 552, 555; *Hartwig* v. *Ætna Life Ins. Co.*, 164 Wis. 20.) The evidence is not entirely clear, but it indicates that the agents submitted bills for the premiums and continued negotiations for payment after delivery of the indorsement slip. Failure to pay the additional premiums while the amount was in dispute did not cause forfeiture of the policies. (*Perry* v. *Bankers' Life Ins. Co.*, 47 App. Div. 567; affd., 167 N. Y. 607.) During the dispute concerning the rate and its payment, two courses were open to the defendants. One to cancel the policy and return the unearned premium; the other to proceed by suit or otherwise to collect the premiums against which, on defendants' theory of the oral modification, the plaintiff had no defense. They adopted neither, but elected to temporize with the matter until the fire occurred. Under the facts and well-

settled legal principles, we think the learned justice was in error in his conclusion. There are, as we have indicated, questions of fact yet to be determined.

The theory of conditional delivery now argued by respondents appears for the first time on this appeal. It was not considered nor was the case decided upon that ground at the trial. There was an oral condition or agreement that a new rate should be substituted at a later date, but no restricted delivery. The policy was in effect as valid insurance. (*Grannis* v. *Stevens*, 216 N. Y. 583.) We do not need to speculate on what the legal effect of the agreement on a new future rate might have been had the plaintiff failed to accept the slip, and if he had not in legal effect adopted the modification of the contract. (See *St. Regis Paper Co.* v. *Hubbs & Hastings P. Co.*, 235 N. Y. 30.)

The judgments should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

VAN KIRK, P. J., HINMAN, HILL and HASBROUCK, JJ., concur.

Judgments reversed on the law, and a new trial granted, with costs in one action to the appellant to abide the event.