EMANUEL METZGER, as Receiver of the KINGSTON CHEMICAL MANUFACTURING COMPANY, INC., Appellant, *v.* ÆTNA INSURANCE COMPANY, Respondent. (Action No. 3.)

Third Department, March 19, 1930.

*Joseph M. Fowler* [*John T. Loughran* of counsel], for the appellant.

*Ainsworth, Carlisle & Sullivan* [*Charles B. Sullivan* of counsel], for the respondent.

DAVIS, J. The action is to recover on a policy of fire insurance. The only question presented relates to whether the policy was valid and in effect at the time the fire occurred.

Many of the principal facts have been stated in the opinion in actions Nos. 1 and 2 between substantially the same parties, decided herewith (229 App. Div. 2). This case, however, stands upon a different footing and the additional facts may now be given.

The coverage was for $1,500 " On stock of merchandise consisting principally of chemical supplies, napthalene and crude manu-factured and in the process of manufacture — All while contained in the two-story frame, fireproof roof building, in process of erection, to be used as manufacturing plant * * *." In the body of the policy it was stated that the term was one year, beginning on the 5th day of July, 1916, the rate was given at $1.25 and the total premium $18.75. Attached to the policy was a rider called " builder's risk clause " containing the following language: " It is understood and agreed that this policy covers the property described herein only while the building is in process of erection and com-pletion and not as an occupied building, and that all liability under this policy shall cease when the building shall become occu-pied in whole or in part; except that if the building is to be a manu-facturing plant, machinery may be set up and tested." The premium was paid and the policy delivered. The plaintiff has fixed the date of the completion of the building as the latter part of July or the first part of August. When completed it was to be used as a " manufacturing plant." When the policy was issued

such use had not begun. By its terms this policy became inoperative when the building was completed. It did not become " occupied " by the casual storage of goods. The limitation of risk was during the " process of erection and completion." The two clauses on coverage and builder's risk are consistent with each other and indicate an agreement to insure only for the period during the process of erection. (*Hayward* v. *Liverpool & L. L. and F. Ins. Co.*, 2 Abb. Ct. App. Dec. 349.) They limit the period of one year first stated. Riders or other written provisions of the policy must prevail over the printed parts if repugnancy exists between them. (*Harper* v. *Albany Mut. Ins. Co.*, 17 N. Y. 194; *Chadsey* v. *Guion*, 97 id. 333; *Palatine Ins. Co.* v. *Ewing*, 92 Fed. 111, 114.)

It is, perhaps, unusual, as plaintiff suggests, that a builder's risk clause should be attached to a policy covering merchandise; but there is no legal reason why the parties may not agree on terms out of the ordinary. The plaintiff's theory was, as determined by the complaint, that the builder's risk clause was attached through inadvertence or mutual mistake; and that it was intended to issue insurance for one year with a readjustment of rate after the building was completed and inspected. Reformation of the policy was asked to make it conform to the agreement of the parties.

On the trial the plaintiff testified that he had taken the policy and put it in his safe without reading and had no knowledge of the builder's risk clause. Very properly, the learned trial justice held that a neglect to read and become familiar with the terms of his policy furnished no legal excuse to plaintiff — relying upon the authority of *Metzger* v. *Ætna Ins. Co.* (227 N. Y. 411). This doctrine, either as applied to the policy or to an application therefor, is not new, but rather is the settled law of the State. (See *Hook* v. *Michigan Mut. Life Ins. Co.*, 44 Misc. 478; affd., 139 App. Div. 922; *Stanulevich* v. *St. Lawrence L. Assn.*, 228 N. Y. 586; *Satz* v. *Mass. Bonding & Ins. Co.*, 243 id. 385; *Kwiatkowski* v. *Brotherhood of Am. Yeomen*, Id. 394.) Unless there is fraud, estoppel or waiver the insured may recover on a policy of insurance only in accordance with its terms.

Here there is no evidence of mutual mistake or any other recognized ground for reformation of insurance policies. (*Salomon* v. *North British & M. Ins. Co.*, 215 N. Y. 214; *Miaghan* v. *Hartford Fire Ins. Co.*, 12 Hun, 321; *Cary Mfg. Co.* v. *Merchants' Ins. Co.*, 42 App. Div. 201.) At the most, the plaintiff's claim is that there was an oral agreement preceding its issuance to modify the policy and to extend its term by striking out the builder's risk clause upon the adjustment and payment of a new premium. There is evidence that the same talk preceded the issuance of this policy that occurred

in relation to the others — that the rate should be readjusted in the future and coverage continued. Had that agreement been consummated after the building was completed, the defendant might be deemed to have waived the provisions in the rider or be estopped from asserting it as a defense, for the reason that a new premium had been accepted with the builder's risk clause in effect; and the policy on its face would have been void at its inception. The courts will not recognize that the parties contemplated any such result. (*Ludwig* v. *Jersey City Ins. Co.*, 48 N. Y. 379; *Wood* v. *American Fire Ins. Co.*, 149 id. 382, 386.) But the authorities which sustain the plaintiff in the other actions referred to, will here prevent parol proof of prior agreements to introduce new terms into a policy complete within itself.

We now come to the events occurring on December 16, 1916, when the agent sent to the plaintiff with the other riders containing a new five-dollar rate one that might be attached to the policy in question. Just what was the purpose in offering a rider to be placed on this policy which by its provisions was terminated, we are not informed.. At best, we may regard it as a willingness to revivify the policy that was dead. It may be that it was proposed to waive the provisions of the builder's risk clause now obsolete, and continue the insurance on the goods in the now completed building. If we take that view of it, the offer was made on new terms, to wit, a new rate for which payment was demanded. The plaintiff rejected the offer of a new contract and repudiated the insurance in words not different from those used regarding the other riders or slips but under other conditions. There he had valid insurance policies with the premiums paid and the implication of credit for the new rates. Here his policy was invalid and could become revived only by a new agreement upon which the minds of both parties must fully meet. Acceptance on the part of the plaintiff of the offer tendered must be complete and unequivocal if there was to be a new contract. (*Chicago & G. E. R. Co.* v. *Dane*, 43 N. Y. 240; *Travis* v. *Nederland Life Ins. Co.*, 104 Fed. 486, 488; *Brown* v. *Dutchess County Mut. Ins. Co.*, 64 App. Div. 9, 13; Am. Inst. Restatement of the Law of Contract, §§ 58, 59.) The acceptance came too late after the fire occurred. The retention of the policy after it became void did not give it life. (*Gately-Haire Co.* v. *Niagara Fire Ins. Co.*, 221 N. Y. 162.) Nor did the failure of defendant to return the unearned portion of the premium prolong its existence. (*Buckley* v. *Citizens' Ins. Co.*, 188 N. Y. 399.)

The judgment should be affirmed, with costs.

Van Kirk, P. J., Hinman, Hill and Hasbrouck, JJ., concur.

Judgment affirmed, with costs.