■ ESTATE OF HELEN K. ANGLIN, Deceased, by JAMES F. DWYER and Another, as Coexecutors, Appellant, v ESTATE OF EDWIN J. KELLEY, Deceased, by NORMA A. KELLEY, as Executrix, et al., Respondents, et al., Defendant. [705 NYS2d 769] —Judgment unanimously reversed on the law without costs, defendants' motion and cross motion denied, plaintiff's motion and cross motion granted and judgment granted in accordance with the following Memorandum: Supreme Court erred in granting the motion of the Estate of Edwin J. Kelley, deceased, by Norma A. Kelley, as executrix, and the cross motion of Harold F. Leckey (defendants) and denying the motion and cross motion of plaintiff and declaring that the purchase price of the limited partnership interest of Helen K. Anglin (Anglin) under the Partnership Buy-Sell Agreement (buy-sell agreement) is $485,871. Anglin was a limited partner in Kelley Bros. Under the terms of the buy-sell agreement, her estate (plaintiff) was obligated upon her death to sell her interest to the general partners (defendants) at a price "equal to the amount of [Anglin's] Agreed Capital Account, as such term is defined and used in the [restated partnership agreement] * * * as of the date of her death." The court agreed with defendants that the amount of Anglin's agreed capital account, and hence the sale

price, was properly determined by defendants in accordance with the longstanding accounting practice of the partnership. It rejected plaintiff's contention that the sale price is $1,420,217, which represents the amount of Anglin's agreed capital account determined in accordance with generally accepted accounting principles on the date of Anglin's death.

We agree with plaintiff that the buy-sell agreement, when read in conjunction with the restated partnership agreement, does not permit any deviation from generally accepted accounting principles. Under sections 4.01 and 5.01 (A) of the restated partnership agreement, the agreed capital account is inextricably linked to the partnership's net profits, which are required under section 5.01 to be "determined by generally accepted accounting principles." While section 5.01 further provides that, "[i]n conjunction therewith, the General Partners may, in their sole discretion, adopt certain accounting methods", that section does not permit the adoption of accounting methods deviating from generally accepted accounting principles. Contrary to defendants' contention, the doctrine of practical construction has no application in the absence of any ambiguity (*see, Hopwood Plays v Kemper*, 263 NY 380, 384).

It is undisputed that, between 1984 and 1997, the partnership failed to follow generally accepted accounting principles with respect to the net profits of its wholly owned subsidiary, leading to the undervaluing of each partner's agreed capital account and reduced annual cash distribution checks under the restated partnership agreement. Anglin was aware of that accounting practice and its effect on her agreed capital account and cash distribution checks, and she accepted the checks without objection. We reject defendants' contention that Anglin's acquiescence gives rise to the defense of laches. "The essential element of this equitable defense is delay prejudicial to the opposing party" (*Matter of Barabash*, 31 NY2d 76, 81, *rearg denied* 31 NY2d 963; *see, Matter of Schulz v State of New York*, 81 NY2d 336, 348), and there is no prejudice here. Contrary to the contention of defendants, they have not been prejudiced by the death of two of the three parties to the buy-sell agreement. Even if those parties were alive, their testimony regarding the intent of the parties to the buy-sell agreement would constitute parol evidence, which is inadmissible "to vary or change the unambiguous language of the agreement" (*Hoffman v Eisenberg*, 140 AD2d 306, 307, *lv denied* 72 NY2d 806). Leckey contends that he has been prejudiced because he devoted his life to the management of the partnership with the understanding that only the general partners would benefit from increases

in the value of the partnership. That understanding, however, is not reflected in the unambiguous language of the restated partnership agreement, pursuant to which Leckey was compensated $250,000 a year for his management duties.

We also reject defendants' contention that, by her acquiescence, Anglin waived plaintiff's rights under the buy-sell agreement. Such a waiver is not "lightly presumed" (*Frank Corp. v Federal Ins. Co.*, 70 NY2d 966, 968). "The intent to waive 'must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act'" (*Ess & Vee Acoustical & Lathing Contrs. v Prato Verde, Inc.*, 268 AD2d 332, quoting *Orange Steel Erectors v Newburgh Steel Prods.*, 225 AD2d 1010, 1012). The conduct of Anglin during her lifetime is not necessarily referable to the buy-sell agreement, and her acceptance of reduced cash distribution checks is not inconsistent with plaintiff's insistence that, upon Anglin's death, defendants abide by the letter of the buy-sell agreement (*cf., Hand v Kenyon & Kenyon*, 246 AD2d 446, *lv dismissed in part and denied in part* 92 NY2d 872). Furthermore, plaintiff's rights under the buy-sell agreement did not come into existence until Anglin's death. "A waiver, to be effectual and beyond recall, must be of some present existing right, conferred by statute or otherwise" (*People ex rel. Union Ins. Co. v Nash*, 111 NY 310, 317; *see*, 57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 81, at 118).

Finally, we reject defendants' contention that the agreements have been modified by the conduct of the parties. While a contract may be modified by a course of actual performance (*see, Rosen Trust v Rosen*, 53 AD2d 342, 352, *affd* 43 NY2d 693), "any change in an existing contract must have a new consideration to support it" (*Metzger v Aetna Ins. Co.*, 229 App Div 2, 6; *see, Schwartzreich v Bauman-Basch*, 231 NY 196, 203, *rearg denied* 231 NY 602; *Weed v Spears*, 193 NY 289, 293; *see also*, 22A NY Jur 2d, Contracts, § 473, at 168), and there is no such consideration here.

We thus reverse the judgment, deny defendants' motion and cross motion, grant plaintiff's motion and cross motion and grant judgment in favor of plaintiff declaring that the purchase price of plaintiff's limited partnership interest under the buy-sell agreement is $1,420,217. (Appeal from Judgment of Supreme Court, Onondaga County, Tormey, III, J.—Declaratory Judgment.) Present—Pigott, Jr., P. J., Pine, Wisner and Scudder, JJ.