10-3560-cv
Szafran v. Sandata Techs., Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of December, two thousand eleven.

PRESENT:

> JOSÉ A. CABRANES,
> CHESTER J. STRAUB,
> DEBRA ANN LIVINGSTON,
> > *Circuit Judges*.

---

EMIL SZAFRAN,
> *Plaintiff-Appellant*,

-v-                                                                 No. 10-3560-cv

SANDATA TECHNOLOGIES, INC.
> *Defendant-Appellee*.

---

> SANFORD F. YOUNG, Law Offices of Sanford F. Young, New York, New York, for *Plaintiff-Appellant*.

> MARTIN D. EDEL, Miller & Wrubel P.C., New York, New York, for *Defendant-Appellee*.

Appeal from the United States District Court for the Eastern District of New York

(Seybert, *Judge*).

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DE-CREED that the judgment entered on August 13, 2010 and amended on December 7, 2011 is AFFIRMED.

Plaintiff Emil Szafran ("Szafran") appeals from the final judgment entered by the District Court on August 13, 2010 and amended on December 7, 2011 awarding him $60,000 in damages for his breach of contract claim and awarding judgment in favor of Defendant Sandata Technologies, Inc. ("Sandata") on Szafran's *quantum meruit* and New York labor law claims. We presume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal and revisit those topics below only as necessary to facilitate this discussion.

We review the District Court's decision to grant a new trial under Fed. R. Civ. P. 59(a) for abuse of discretion. *See Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003). A district court may grant a motion for new trial when it believes that "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992) (omission in original) (internal quotation marks omitted). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (internal quotation marks omitted). "[W]hether a written contract is ambiguous is a question of law" which we review *de novo*. *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396-97 (2d Cir. 2009).

In the second trial in this matter, the jury awarded Szafran damages of $382,753 plus interest on his breach of contract claim. The District Court subsequently granted Sandata's motion for a new trial on damages pursuant to Fed. R. Civ. P. 59(a), on the grounds that the term "revenues received" in Szafran's contract with Sandata (the "Contract"), upon which Szafran's commissions were to be

calculated, unambiguously required calculation of commissions on the basis of funds of which the company was in actual receipt. On appeal, Szafran argues that the term should be read as requiring calculation on the basis of revenues billed.

We agree with the District Court. While the word "revenues," taken alone, may well be ambiguous, any ambiguity evaporates when it is paired with the word "received." The District Court appropriately recognized that the plain meaning of "receive" is "to come into possession of." Szafran provides no reason for us to believe that "revenues received," which is not defined in the Contract, should be given a meaning different from its ordinary one. The evidence that Sandata often in fact calculated Szafran's commissions on the basis of revenues billed is irrelevant, since the plain meaning of the Contract is inconsistent with any other interpretation than the one adopted by the District Court. *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 207 (2d Cir. 2005) (noting that, where a contract is not "reasonably capable of more than one meaning . . . the court should not . . . rel[y] on other extrinsic evidence of the parties' intent, such as their course of dealing"(internal quotation marks omitted)). Szafran's argument that the parties by their course of performance modified the original Contract to provide for the calculation of commissions based on revenues billed fails because Szafran never points to any consideration for this alleged modification. *See Estate of Anglin ex rel. Dwyer v. Estate of Kelley ex rel. Kelley*, 705 N.Y.S. 2d 769, 772 (N.Y. App. Div. 2000) ("While a contract may be modified by a course of actual performance, a change in an existing contract must have a new consideration to support it." (citation and internal quotation marks omitted)).

After the parties had rested in the trial below, the District Court announced that the jury would serve only an advisory role as to the *quantum meruit* claim. Although the jury found for Szafran on this claim, the District Court ruled in Sandata's favor, in part on the grounds that the Contract

covered the subject matter of the *quantum meruit* claim. We agree with the District Court. Under New York law, a *quantum meruit* claim ordinarily cannot be brought where a valid contract exists between the parties and covers the subject matter at issue in the claim. *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006). The Contract here provides for retention of Szafran "in relation to the development, implementation and support of the automated time and attendance system, home health care systems and such other consulting services as may be required by the Company and agreed to by" Szafran. Pl. Trial Ex. 1 at ¶ 1. While in other circumstances we might question whether Szafran's sales to the Town of North Hempstead constitute "consulting services," in this case Article 6 of the Contract expressly contemplates the inclusion of sales in the services Szafran would perform for Sandata. *Id.* at ¶ 6. Szafran has not suggested any means by which the term "other consulting services" might be limited so as to exclude his work for the Town of North Hempstead from its scope.

Nor is Sandata judicially estopped from arguing that Szafran's work for the Town of North Hempstead is included within the meaning of "other consulting services." For the doctrine of judicial estoppel to apply, "a party's later position must be clearly inconsistent with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). Here, Sandata argued in the first trial and appeal that Szafran was an independent contractor and not required to work to receive his base consulting fee, and argues now that, when Szafran and Sandata did reach an agreement that Szafran would perform work for Sandata, then that work was governed by the terms of the Contract. These two positions are not inconsistent. Accordingly, we agree with the District Court that Szafran's work for the Town of North Hempstead falls within the scope of the

Contract and that a *quantum meruit* action is therefore unavailable.[1]

Lastly, we agree with the District Court that Szafran has failed to provide any proof that Sandata violated New York Labor Law § 191-c. Section 191-c applies to Sandata only if it is a "principal," defined as a "person or company engaged in the business of manufacturing, and who . . . [m]anufactures, produces, imports, or distributes a product for wholesale." New York Labor Law § 191-a(c). Szafran described Sandata as a service provider and has pointed to no evidence–from the large amounts collected during two trials–that Sandata has ever engaged in manufacturing, importing, or distributing a product for wholesale.

To the extent Szafran raises other arguments with respect to the judgment below, we have considered them and reject them as meritless.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[1]Because Szafran's *quantum meruit* claim fails as a matter of law, he would have been entitled to judgment as a matter of law under Fed. R. Civ. P. 50(a) even if the jury had been more than advisory. Accordingly, we do not reach the questions of whether *quantum meruit* sounds in law or equity or whether the District Court abused its discretion by waiting until late in the proceedings to inform the parties that the jury would serve an advisory role for the *quantum meruit* claim.